## GEORGE J. HINMAN *vs.* HENRY A. PARKIS AND WIFE.

At common law the earnings of the wife vest in the husband.

The husband may make a valid gift to the wife which will be supported in equity.

So husband and wife may contract for a valuable consideration for a transfer of property from him to her, and the agreement be enforced in equity.

But such agreements are void at law, and equity examines them with great caution before it will confirm them. They must be fair and certain; it must clearly and satisfactorily appear that the purpose is a provision for the wife; the property must be distinctly separate from the mass of the husband's property; and they must not interfere with the rights of creditors.

A promise by the husband to the wife, that she shall have certain moneys or property without a delivery to her, to be distinctively hers, will not transfer the title to her by way of gift.

So a promise by the husband that he will keep her earnings and invest them in her name and for her benefit, is not valid without a consideration to sustain it.

BILL in equity, to set aside a conveyance of real estate made by the respondent Henry A. Parkis to the other respondent his wife. The petitioner had levied an execution on the land as a creditor of the husband. The case was referred to a committee, by whom the following facts were found.

The judgment recovered against Henry A. Parkis by the petitioner, on which the land was set off on execution, was rendered on a note for $1,425.29, dated November 1, 1859, executed by Parkis to the petitioner. The indebtedness to the petitioner was made up in part of a note for $900 and interest dated December 21, 1854, given by Parkis to the petitioner for advances made to him in the business of ship building then carried on by Parkis and one Vincent, and in part of an award made in favor of the petitioner against Parkis, which award was an adjustment of the copartnership accounts between the petitioner and Parkis, who had previously been partners in the business of ship building.

The real estate in question was conveyed to Parkis as follows:—a part by Horace Staples and Geo. S. Adams, by deed dated July 17th, 1852, part by Staples and Adams, by deed dated February 13th, 1855, and the remaining part by E. K. Vincent by deed dated April 26th, 1858. In the year 1852 a dwelling house was erected on the portion conveyed to Parkis by Staples and Adams by their deed of July 17th, 1852. On the 5th of September, 1859, Parkis conveyed to Horace Staples, for the purpose of having the same conveyed to his wife Frances B. Parkis for her life, that part of the land on which the house had been erected; and Staples on the same day conveyed the same to her for the term of her life. On the 6th of January, 1862, Parkis, for the purpose of vesting the title to all of the real estate in his wife, conveyed all his interest therein to his son-in-law J. W. Jennings, who on the same day conveyed the same to her. On the same day the said Frances and Henry Parkis by their joint deed mortgaged said real estate to Joseph J. Jennings, to secure a note

for six hundred and fifty dollars made by Henry Parkis on the 4th of January, 1862, which note is unpaid and the mortgage remains an incumbrance on the estate. All the deeds at the time of the commencement of the suit had been recorded in the land records of the town of Westport, where the land was situated. The real estate, including the improvements thereon, cost about two thousand dollars, and is now worth about three thousand dollars.

Henry Parkis, then and still a journeyman ship carpenter by trade, was married to the said Frances B. Parkis, then a girl out at service in the city of New York where they both resided, in the month of December, 1832. At the time of the marriage the said Frances had seventy-five dollars in money, which she had saved from the avails of her personal services, and the said Henry had seventy dollars, also the avails of his labor as a ship carpenter, which, with necessary and suitable apparel, appears to have been all the property which they owned. They commenced house-keeping in the city of New York in the month of May next succeeding their marriage, and during the time intervening Parkis worked at his trade, and his wife again returned to service as housekeeper, at the rate of seven dollars per month. Soon after the marriage Mrs. Parkis handed over to her husband said sum of seventy-five dollars, which he, with the seventy dollars of his own earnings, deposited in his own name in a savings bank in the city.

A short time prior to the commencement of house-keeping Mrs. Parkis informed her husband that she should require the seventy-five dollars which she had delivered to him after their marriage, for the purpose of enabling her to purchase necessary articles of household furniture. To this use of the money he objected, telling her that he wished his money to be used for that purpose, as he did not wish to take from her the avails of her labor; and then or about that time promised her that this seventy-five dollars, with what she had earned since her marriage, and all that she might thereafter earn by her personal labor, should be hers, and kept for the purpose of purchasing at some future time a place in the country to

belong to her.　This promise was never reduced to writing, nor was there any pecuniary or other consideration therefor except as above stated.

Within a short time thereafter, in the year 1833, Mrs. Parkis commenced to work as a laundress, and personally performed all the labor incident to such employment, in addition to the ordinary housework for the family, without any hired assistance, excepting occasionally for a short time during periods of illness.　This business she followed until the year 1852, when with her husband and family she removed to Westport.　The net avails of her labor as a laundress during that period, without computing any interest thereon, amounted to not less than thirty-five hundred dollars.　The money earned by Mrs. Parkis was generally paid to or collected by her, and together with the earnings of Mr. Parkis deposited in some savings bank in New York, sometimes by her and sometimes by her husband, but always in his name and subject to his order, and there was nothing in the manner of keeping the accounts from which it appeared that any person beside the husband had any interest therein, and whenever he had occasion to do so he was accustomed to draw money from the savings banks in the same manner as though he was solely interested therein; but with the understanding and the intention on his part, that whatever he drew from the earnings of his wife should be repaid to her, or again deposited for her benefit.

After the removal to Westport Mrs. Parkis with her husband's assent took boarders, and performed all the necessary household labor herself, without hired help; but whether any or if any what amount of profit accrued therefrom the evidence did not sufficiently show.

During the year 1852, and at the time of the purchase of the land on which the house was built, and for a considerable time after its erection, the said Henry Parkis was in the employment of Staples and Adams as a journeyman ship carpenter, with whom he had a running account in which he was credited with his services and with sundry sums of money drawn by him from savings banks in New York, which had

been deposited therein as above stated, amounting to about twelve hundred dollars, and which was placed in the hands of Staples and Adams for the purpose of paying for the house erected on the first mentioned piece of land. The materials for the house and the labor of building the same were furnished and were paid for by Staples and Adams, and were by them charged to Parkis on account, as also was the land described in the petition, excepting that part of it which was purchased of E. K. Vincent, which was taken towards payment of a bill for board due from him to Parkis. When the land was purchased and the dwelling house built it was understood between Mr. and Mrs. Parkis that it was for her benefit, to be paid for by her earnings and conveyed to her as her property pursuant to the arrangement made soon after the marriage as before stated; and the reason why the same was not conveyed to her at the time, was that they had been told and believed that in this state a married woman could not legally take a deed of real estate in her own name. After the house had been erected Mrs. Parkis frequently importuned her husband to convey the property to her. On such occasions he would tell his wife that the property was hers, and promised to convey it to her, but never did so until the execution of the deeds above referred to through the said Staples and Jennings.

On the 6th of January, 1862, the date of Parkis's deed to Jennings, and of Jennings's deed to Mrs. Parkis, he was in embarrassed circumstances, and was indebted to an amount exceeding his means of payment; and one inducement to make the conveyance to Mrs. Parkis at that time was the fear that if the property remained in his name it might be attached by some of his creditors, and she be thereby subjected to loss or to great trouble and inconvenience; but there was no fraudulent design on his part to conceal his property or to defraud his creditors. The conveyances to his wife were made by him pursuant to what he supposed to be his duty and obligation under the arrangement before stated, made soon after their marriage, and there was no fraud in the transaction unless it is to be implied by law from the facts found.

Hinman *v.* Parkis.

Sometime in 1855 Mrs. Parkis stated to the petitioner Hinman that the real estate in question had been bought with her earnings and that she ought to have it and claimed it.

Upon these facts the case was reserved by the superior court for the advice of this court.

*Loomis* and *W. W. McFarland*, for the petitioner.

1. The promise made to Mrs. Parkis by her husband after their marriage, to give her the proceeds of her personal labor, was a voluntary promise in the strictest sense of the term. It was not only without consideration, but it is clear from the finding that it was not regarded by the parties themselves. Her earnings were paid by her to her husband, deposited by him with his own money in his own name, drawn from the bank and used by him as his own, and for anything that appears without any objection on her part. No distinction in fact was made between his wife's earnings and his own. No attempt was made to perform this pretended promise till after the petitioner's debt accrued, and what Parkis then did was utterly inconsistent with the existence of the understanding claimed. He did not convey to his wife an estate in fee in this property, though " it was understood between them that it was for her benefit, to be paid for by her earnings and conveyed to her as her property," but he conveyed to her only a life estate, when, if he regarded his promise and intended to carry it out, he would have conveyed to her the fee. But it does not appear that he had even a secret intention of ever conveying to her any other estate in the property until he became insolvent, and then without even a request on her part he conveyed the fee to her for fear that the property might be attached by his creditors.

2. The conveyances then which we ask the court to set aside so far as they affect the petitioner's rights in the property in question, were both voluntary conveyances resting only on the alleged parol and post-nuptial promise of Parkis to his wife, that he would give her, at some time and in some form, the proceeds of her labor. A conveyance has been held to be voluntary even when the land conveyed was purchased

by the husband with the avails of notes taken for the price of the wife's land which had been sold. *Whittlesey* v. *Mc-Mahon*, 10 Conn., 137. If a husband reduce the choses in action of his wife to possession, any subsequent settlement of them upon the wife is a voluntary settlement. *Roland* v. *Smith*, 1 Mylne & Craig, 53. "It is certain that the mere performance of a moral duty, even of the most meritorious nature, has not been deemed sufficient to protect a voluntary conveyance, even in favor of a deeply injured party to whom it is designed to be a compensation for injustice and deceipt." 1 Sto. Eq. Jur., § 374. See further to the same effect, *Gilham* v. *Locke*, 9 Vesey, 612; *Lady Cox's Case*, 3 P. Wms., 339; *Priest* v. *Parrot*, 2 Vesey, 160. A conveyance or settlement by a husband upon his wife in pursuance of a parol agreement before marriage, is a voluntary settlement as against antecedent creditors, and has never been sustained. 2 Kent Com., 441; 1 Sto. Eq. Jur., § 374; *Reade* v. *Livingston*, 3 Johns. Ch., 481; *Borst* v. *Corey*, 16 Barb., 136. And as to the general rule that the law presumes voluntary conveyances to be fraudulent as to existing creditors; 2 Kent Com., 444; Atherly on Marriage Settlements, 212, 217; 1 Sto. Eq. Jur., §§ 355, 361; *Reade* v. *Livingston*, supra; *Sexton* v. *Wheaton*, 8 Wheat., 229; *Hinde's Lessee* v. *Longworth*, 11 id., 211; *Whittlesey* v. *McMahon*, 10 Conn., 137; *Converse* v. *Hartley*, 31 id., 380; *Young* v. *White*, 25 Miss., 146. In the case at bar there is no proof to repel the presumption of fraud; on the contrary all the circumstances in the case tend to strengthen the presumption.

*Beardsley* and *Alvord*, for the respondents.

1. Upon the finding of the committee a complete title to the property in question was at the date of the levy of the execution vested in Frances B. Parkis the wife by operation of well settled equitable principles, and independently of any legislation of our own state. 1st. The agreement entered into by Mr. Parkis with her at or soon after their marriage, was valid as between the parties and as against Hinman, a subsequent creditor of the husband. A husband may create by gift or

contract a separate estate in his wife. *Slanning* v. *Style*, 3 P. Wms., 337 ; *Pinkston* v. *McLemore*, 31 Ala., 308 ; *Wood* v. *Warden*, 20 Ohio, 518 ; *Barron* v. *Barron*, 24 Verm., 375 ; *Picquet* v. *Swan*, 4 Mason, 443 ; *Threewits* v. *Threewits*, 4 Desau., 560 ; *Wallingsford* v. *Allen*, 10 Peters, 583 ; *Sexton* v. *Wheaton*, 8 Wheat., 229 ; *Garlick* v. *Strong*, 3 Paige, 440 ; *Richardson* v. *Merrill*, 32 Verm., 27 ; *Soubervye* v. *Arden*, 1 Johns. Ch., 240 ; *Liles* v. *Fleming*, 1 Dev. Eq., 185 ; 2 Story Eq. Jur., § 1375. It does not appear that Parkis was indebted at the time of the agreement made with his wife, nor at the time that Staples & Adams and Vincent made the conveyances of the property in question to him in 1852. 2d. The rights of the wife could not be prejudiced by the fact of the taking the deeds in his own name by her husband in 1852, 1855 and 1858. In equity the husband in such a case would be regarded as a trustee for the wife. *Harris* v. *Brown*, 30 Ala., 401 ; 2 Story Eq. Jur., § 1380 ; 2 Roper on Husband and Wife, 151, 157.

2. The statute of 1860, whereby real estate conveyed to a married woman during coverture, in consideration of money accruing from her personal services, is secured to her, is completely applicable to this case. Rev. Stat., 1866, p. 302, sec. 12.

BUTLER, J. The petitioner, a judgment creditor, having levied his execution on two tracts of land which formerly belonged to the debtor, but which before the commencement of the suit had been conveyed to his wife, Frances B. Parkis, seeks to obtain the legal title from the said Frances, alleging that said conveyances were without consideration, voluntary, and as against him void. If his case is proved he is undoubtedly entitled to relief.

The respondents allege that there was a consideration for the conveyances, for that by an " arrangement" between them made soon after their marriage in 1832, all the money she had earned by her personal services, and all she should thereafter earn, were to be hers and kept by her husband, and invested in a place in the country in her name, and that she

did earn moneys, and that the lands in question were in fact purchased with them and conveyed to her pursuant to said arrangement.

It appears from the facts found that the respondents were citizens of New York at the time they were married, and continued so until 1852, and that at the time of the marriage the respondent Frances had about $75 saved from her earnings which she delivered to her husband at the marriage. Soon after the marriage the arrangement set up in defense was made which the committee find as follows :—

" A short time prior to the commencement of housekeeping by said Parkis and his wife, Mrs. Parkis informed her husband that she should require the $75 which she had delivered to him after their marriage, for the purpose of enabling her to purchase necessary articles of household furniture. To this use of the money by her said Parkis objected, telling her that he wished his money to be used for that purpose, as he did not wish to take from her the avails of her labor ; and then or about that time promised her that said sum of $75 saved by her from her earnings before marriage, with what she had since earned, and all that she by her personal labor and industry might thereafter earn, should be hers, and kept for the purpose of purchasing at some future time a place in the country to belong to her. The said promise was never reduced to writing, nor was there any pecuniary or other consideration therefor except as above stated." It is further found that after that and before they removed to Connecticut in 1852, Mrs. Parkis worked out as a laundress, and earned during the whole period an amount without interest of at least $3,500 ; that her earnings were generally paid to her and deposited by her or her husband together with his earnings in some savings bank in New York in his name and subject to his order, and that there was nothing in the manner of keeping the accounts to indicate that any other person had any interest in them, and that, when he had occasion to draw money, he drew as though he was solely interested therein, but with the understanding and intention on his part that

what he drew of her earnings should be repaid to her or again deposited for her benefit. About twelve hundred dollars of such deposit was drawn and paid towards the property in question, and the balance of the purchase money was paid by the money or labor of the husband. This is all there is in the finding which is material to the question whether Mrs. Parkis has any equity in these lands by virtue of the arrangement.

As these parties were during the whole period when these moneys were earned citizens of New York, the question whether Mrs. Parkis acquired any equitable interest in her earnings or not must be determined by the laws of that state and not of this.

What the laws of New York then were as applicable to the question is not found. In the absence of any evidence on the subject they would be presumed to be those of the common law. By the statute of 1840 we are authorized to take judicial notice of the statutes and decisions of other states. We must go then to the statutes and decisions of New York to learn the legal and equitable effect of the arrangement in question.

The statutes of that state have no bearing upon it. Those of 1848, 1849, and 1853, are liberal in their recognition and protection of the rights of married women in respect to their separate estate, but make no alteration in the common law as then in force, in respect to gifts or grants from the husband to the wife, or the right of the husband to her services and earnings. *Lovett* v. *Robinson*, 7 How. P. R., 105 ; Willard's Equity, 641.

By the common law as then in force in that state the earnings of the wife vested in the husband. The husband could make a gift to the wife which would be supported in equity. *Neufville* v. *Thompson*, 3 Edw., 92 ; *Borst* v. *Spelman*, 4 Comstock, 284. So husband and wife could contract for a valuable consideration for a transfer of property from him to her and the agreement be enforced in equity. *Livingston* v. *Livingston*, 2 Johns. Ch., 537. In these respects

their law conformed to that of this and most or all the other states of the Union.

And the general rules which govern courts of equity in respect to the support of such gifts and contracts between husband and wife were in force then, and those rules it is important to recall and bear in mind in considering the equitable effect of the arrangement in question.

Such agreements are void at law. Equity examines them with great caution before it will confirm them. They must be fair and certain; it must be clearly and satisfactorily shown that the purpose is a provision for the wife; the property must be distinctly separated from the mass of the husband's property; and they must not interfere with the rights of creditors. *Wallingsford* v. *Allen*, 10 Peters, 583.

Examined in the light of these essential principles the claim of the respondents can not be sustained. An occasional case may be found perhaps where they have been strained as far as we are asked to go between a widow and heirs, but never against a creditor.

In the first place the arrangement could have no force or effect whatever as a *contract*. There was no *consideration* whatever for the *promise*. The courts of New York we are satisfied would not sustain it as an executory agreement operating to vest the future earnings of the wife in her as earned. If then it could have any operation to transfer an equitable interest in the property it must be by way of gift.

But as a gift it lacks the essential requisite of a delivery to the wife to hold exclusively as her property. " Where the subject matter is capable of delivery, a delivery, actual or symbolical, is essential to constitute a valid gift by parol." Abbott's Digest, 242; see title *Gift*, sec. 1, citing numerous cases. Now in respect to the seventy-five dollars which was hers at the time of the marriage and which she delivered to him afterward, no re-delivery, actual or symbolical, after the making of the arrangement, is found or was claimed. And in respect to the subsequent earnings, although naturally.

paid to and collected by her, they were not reserved or held as hers, but they were immediately passed over to him precisely as if no arrangement existed, and were never retained in her possession as her own.  Nor does the case show any separation of these earnings from the mass of his property to be kept by or for her.  The whole conduct of the parties respecting them is indicative, not of an intentional change of title,—a transfer of interest,—of a separation of property for her sole use,—of the *vesting* of moneys in her, to be held as a provision for her, and by the husband as trustee,—but of an *intention* on the one hand and an *expectation* on the other, that, at some future day, they or an equivalent amount would be set apart, given, devoted to making a provision for her, by the purchase of a place in her name in the country.  The conduct of the parties in connection with the character of the arrangement clearly indicates that there was no executed gift which vested the earnings in the wife and constituted the husband a trustee for her, but an intention and expectation of a future gift, and which was in part executed, but not till after the rights of the petitioner as a creditor had intervened. Such, so far as we can judge from the current of decision in New York, would be the view which their courts would take of the transaction.

But if it were possible to hold the arrangement set up sufficiently certain in itself and sufficiently executed according to the rules of equity to pass an equitable interest in her earnings to the wife by way of gift, it would still be impossible to sustain these conveyances on that ground either by the common or the statute laws of this state.  It appears clearly that the earnings of both parties were indiscriminately deposited in his name, and drawn upon indiscriminately for all their expenses and wants, and that at the time the property in question was purchased, twelve hundred dollars only of the earnings of both remained unexpended.  This use of the fund must be presumed to have been known and assented to by her. The deposits were made in part by her in his name, and she knew of course, as there was no separation, they would be drawn for expenses in connection with moneys earned by him.

If indeed the executory agreement could be holden valid, as the respondents' counsel suppose, so that he could be held responsible as trustee for an amount equal to all that he received of her earnings, then indeed it would be immaterial what particular moneys formed the consideration of this purchase. But if an interest in her earnings arose only by reason of a gift and attached to them as a particular fund, and they were, with her knowledge and acquiescence, expended otherwise, and were not devoted to the purchase of the lands in question, it is not easy to see upon what principle she can claim an equitable interest greater than the amount of her earnings which actually entered into the consideration. Nor is it possible to say how much of her earnings entered into the purchase in fact, and we think it clear that in that respect there is not that certainty which courts of equity require and ought to require in respect to transfers between husband and wife, especially as against a creditor. And as it is not found and can not be ascertained what amount of her earnings were invested in the property, it is not possible to give her the benefit of them in equity or under the statute of 1850, without covering the money and labor of the husband which formed a part of the purchase money from the creditor. If the amount of her interest could be ascertained, perhaps provision could be made for its protection without covering the property of the debtor under her title. As it is, it can not be done and such covering can not be permitted.

But we are satisfied that she must be permitted to retain the life estate conveyed to her by the deed of September 5th, 1859, and that that deed should be confirmed on another ground. It sufficiently appears that the conveyance of the life estate was a reasonable provision for her, and that his property and indebtedness were then such that neither the petitioner nor any other creditor was or could be prejudiced thereby.

The superior court must be advised to pass a decree in favor of the petitioner in respect to the title acquired by the deeds of the 6th of January, 1862, from H. A Parkis to J. W.

Jennings, and from Jennings to Frances B. Parkis subject to the mortgage to Joseph J. Jennings.

In this opinion the other judges concurred; except Mc-Curdy, J., who dissented.