MARY A. BOLAND vs. FRANK J. O'NEIL, ADMINISTRATOR.

72  217
74  128

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The filing of an amended or substituted complaint is a withdrawal of the original one, and prevents the plaintiff from asking for a review of a ruling of the trial court adjudging the latter insufficient.

No agreement looking to a future separation of husband and wife, nor for her maintenance after such separation, will be upheld by a court of equity.

The plaintiff alleged that she was the wife of the defendant's intestate and had agreed with him to relinquish her claim for support and to leave her friends and relatives, with whom she had hitherto resided, and live virtuously among strangers until such time as he might see fit to take her to his own home, and that in consideration thereof he had promised to transfer to her certain savings bank deposits amounting to $10,000; that she had performed her part of the agreement but he had neglected to transfer the deposits; and that his estate was valued at $15,000. On demurrer to the complaint it was *held* that inasmuch as the only apparent cause or reason for the alleged agreement was the convenience of the parties in meeting each other and the concealment of their true relation from the public, the contract was one opposed to good morals and the general welfare of the State and therefore invalid.

Argued June 20th—decided August 1st, 1899.

ACTION to recover damages for the breach of a contract of separation made between husband and wife, brought to the Superior Court in New Haven County and tried to the court, *Prentice, J.,* upon the defendant's demurrer to the amended complaint; the court sustained the demurrer, held the com-

plaint insufficient, and rendered judgment (*Robinson, J.*) for the defendant, from which the plaintiff appealed for alleged errors in the rulings of the court. *No error.*

In the original writ the plaintiff describes herself as Mary A. Boland, formerly known as Mary A. Casey. In the original complaint she asked for $15,000 damages, and for specific performance of the contract therein set forth.

The plaintiff filed an amended complaint, which was demurred to and the demurrer sustained; the plaintiff thereupon filed a second amended complaint which was as follows: "1. The plaintiff was the wife of the said Patrick C. Boland, deceased. 2. Said marriage relation was entered into subsequent to April 20th, 1877. 3. In consideration of the premises, and of the legal and moral obligations which the said Patrick C. Boland, deceased, was under to the plaintiff, and of the plaintiff's promise to and agreement with the said Patrick C. Boland, deceased, not to enforce by legal proceedings her legal rights and claims against him to compel him to support and maintain her, and in further consideration of the plaintiff's promise to and agreement with the said Patrick C. Boland, deceased, to leave her relatives and friends and to go to Hartford, and to live among strangers, and to conduct herself in a virtuous manner, and to support and to maintain herself, and that this condition of affairs should continue until such time as the said Patrick C. Boland, deceased, should be willing to take her to his own home, the said Patrick C. Boland on the 4th day of July, 1896, and on divers other days prior thereto and since said 4th day of July, 1896, agreed to and with the said Mary A. Boland to transfer, assign and deliver to her two bank books, to wit: one book on the City Savings Bank, of said Meriden, and one on the Meriden Savings Bank, of said Meriden, together with the sums of money owned by the said deceased and represented by the said books, being in all the sum of $10,000. 4. From time to time prior to and since said 4th day of July, 1896, and up to the date of his death the said Patrick C. Boland, deceased, renewed his promise to and agreement with the plaintiff, as set forth in the preceding paragraph, and upon

the considerations set forth, to transfer, assign and deliver to her, the said Mary A. Boland, the legal title to said bank books and the sums of money represented thereby, being in all the sum of $10,000, and partially made arrangements so to do in the summer of 1897, when he died suddenly at said Meriden, and never in fact did transfer, assign and deliver to her the said bank books and the sums of money represented thereby, being in all the sum of $10,000, nor any part thereof. 5. Said Mary A. Boland, in fulfillment of her promises and agreements as aforesaid, did not pursue her legal right to support and maintenance against the said Patrick C. Boland, deceased, and did leave her relatives and friends and go to Hartford, and there remained until the time of the decease of the said Patrick C. Boland, and did conduct herself in a virtuous manner, and did also support and maintain herself during all of the said time, and performed all of the other conditions of the said agreement on her part to be performed."

This complaint also alleged that the deceased left an estate valued, at the time of his death on July 17th, 1897, at $15,000; that plaintiff's claim had been duly presented to the defendant administrator, and claimed $15,000 damages, without asking for the transfer to her of said bank books.

To said second amended complaint the defendant demurred upon the following grounds: " 1. That the facts set forth in said contract do not constitute a valid contract, for that a husband and wife have not either in law or in equity capacity to contract together in regard to the matters in said substituted complaint set out in the manner alleged. 2. That the alleged contract or agreement therein set out is not valid, either in law or in equity, because no sufficient or adequate consideration therefor is alleged. 3. That the agreement alleged to have been made was and is void both at law and in equity as contrary to good morals, and against public policy. 4. That the facts alleged show a promise to make a gift, and as no delivery in fact is alleged to have been made the transaction is incomplete, and will not support a proceeding either at law or in equity."

*Cornelius J. Danaher*, for the appellant (plaintiff).

*George A. Fay* and *William L. Bennett*, for the appellee (defendant).

HALL, J. The rulings of the court sustaining the defendant's demurrer to each of the two amended complaints are the reasons of appeal assigned. The plaintiff is not entitled to have reviewed the ruling of the court upon the demurrer to the first amended complaint. The filing of the second amended complaint was a withdrawal of the first.

It is alleged as a ground of demurrer, that the contract described is not one which, either in law or equity, could be entered into between husband and wife, and that it is void both in law and equity as contrary to good morals and against public policy.

Equity does not recognize the same right in husband and wife to contract with each other that they would have at common law were they single. Contracts made in good faith upon a valuable consideration, and which are just and reasonable and certain in their terms, will be enforced in equity; but courts of equity will examine them with great caution before it will confirm them. *Hinman* v. *Parkis*, 33 Conn. 188; Schouler on Dom. Rel. § 191.

Among the contracts between husband and wife which are thus supported by courts of equity, are certain agreements, made either with or without the intervention of a trustee, for the maintenance of the wife living separate from her husband.

The principle upon which they are sustained is, not that the separation should be enforced, nor that it is lawful for the parties to contract to separate, but that when they are living apart for causes rendering such separation reasonably necessary, the agreement of the husband to perform his duty to furnish support for his wife should be carried out. No agreement looking to a future separation of husband and wife, nor for her maintenance after such future separation, will be maintained by a court of equity. 2 Story on Eq. Jur. §§ 1427, 1428.

That the basis of the action of a court of equity in sustaining certain contracts between husband and wife for the sepa-

rate maintenance of the latter is the existence of an actual, reasonable ground for separation, and not a frivolous or immoral one, or one which offends public policy, is clearly shown by the majority opinion in the case of *Nichols* v. *Palmer*, 5 Day, 47.

Chief Justice Cooley, in *Randall* v. *Randall*, 37 Mich. 563, 571, said, with reference to the enforcement of such contracts in equity : "We apprehend there was never any impediment to their (husband and wife) dealing with each other on the basis of contract, when no consideration of public policy prevented it ; in other words, when the occasion required it, and when the contract in view of the relations of the parties was one proper and suitable to be made. . . . It is not the policy of the law to encourage such separations, or to favor them by supporting such agreements as are calculated to bring them about."

Chancellor Walworth, in *Carson* v. *Murray*, 3 Paige, 483, 500, deprecates in strong terms the policy of maintaining agreements between husband and wife for a separation, even when made with the intervention of a trustee. "It may well be doubted," says he, " whether public policy does not forbid any agreement for a separation between husband and wife, except under the sanction of a court of justice ; and whether it does not also require that such agreements should be limited to those cases where by the previous misconduct of one of the parties the other is entitled to have the marriage contract dissolved, either wholly or partially, by a decree of the competent tribunal." Similar views are expressed by Justice Davis in *Walker* v. *Walker*, 9 Wall. 743, 750 ; 2 Story on Eq. Jur. § 1427 ; Bishop on Mar. Div. & Sep. 1264–1280 ; Schouler on Dom. Rel. §§ 215–217.

In *Stebbins* v. *Morris*, 19 Mont. 115, 120, in which a complaint for the enforcement of a provision for the support of the wife in an agreement of separation was demurred to, it was held that the general doctrine as to enforcing agreements of separation was subject to certain limitations. We quote from the opinion : "An agreement for a separation which is to take place in the future is void as against public policy.

So, too, after such an agreement is entered into, its terms must be immediately complied with on peril of nullity. And at the time of the making of such an agreement the relations between the husband and wife must be of such a character as to render the separation a matter of reasonable necessity for the health or happiness of the one or the other. There must be a moving cause for it in addition to the mere mutual volition of the parties. If it is the outcome of mutual caprice only, or a reckless disregard of the obligation of the marriage tie, then the courts will not enforce it. In almost all the cases that we have investigated . . . the court has had before it an unhappy condition of marital relations as a moving cause of the contract. Judges have carefully discriminated between agreements of separation, outgrowths of domestic sorrow, entered into for the purpose of avoiding public scandal or notoriety, and those which have resulted from a wanton or reckless disregard of one of the highest obligations of life,— the duty which the husband and wife mutually owe to each other and to the public at large."

The mutual enjoyment by the contracting parties of the society and affection of each other, the establishment of the home and the family, the birth of children in a wedlock which is both actual and apparent, and the control of them in infancy by both parents, are essential purposes of the marriage relation. Contracts of the parties tending to defeat them will not be sustained either in law or equity. The public have a vital interest in the question whether husband and wife may contract to live apart after their marriage.

JUDGE PARDEE said in *Seeley's Appeal*, 56 Conn. 202, 205 : " Inasmuch as the State rests upon the family and is vitally interested in the permanency of a marriage relation once established, it, for the promotion of public welfare, and of private morals as well, makes itself a party to every marriage contract entered into within its jurisdiction." It was held in that case that the law would not recognize an agreement between husband and wife which provided that he should pay to her a certain sum in consideration of her promise not to claim alimony in a divorce suit to be commenced by her.

Whether the situation of the parties in the case before us was such as to render the agreement between them a proper and reasonably necessary one, and whether its terms and purpose are such that a court of equity ought to enforce it, must be ascertained by reference to the language of the complaint.

As the complaint alleges that the plaintiff was the wife of Patrick Boland, we are bound to assume that she was lawfully married to him, notwithstanding the somewhat peculiar statement which follows, that "said marriage relation was entered into subsequent to April 20th, 1877."

It does not appear from the complaint that the plaintiff ever lived with her alleged husband as his wife, or was supported by him, or was ever known as his wife, or that she ever assumed his name. On the contrary, from the statements in the second complaint it would seem that he had never openly lived with her as his wife, and was unwilling to do so, and that she was still living with her relatives and friends, and that the agreement contemplated not a change for the purpose of her living apart from him, but from her relatives and friends.

But if we could assume from the language of the complaint that they had ever lived together, the promise of the plaintiff which is alleged as a part of the consideration of the agreement of Patrick Boland to transfer the savings bank books, was that they should live apart in the future. Her promise was as set forth in the complaint, " to leave her relatives and friends " and " to go to Hartford and live among strangers," etc. The agreement is alleged to have been made on the 4th of July, 1896, and " on divers other days prior thereto and since " said day. It is not alleged to have been in writing. There appear to have been no domestic difficulties. Their personal relations seem to have been pleasant; nor does there appear to have been any reason why it should be desirable that she should leave her relatives and friends and go to Hartford to live among strangers, unless it was that under those circumstances they might more conveniently meet than while she resided with her relatives and friends, and that at the same time they might conceal their true relations from the

public. The agreement was evidently not for the termination or suspension of their relations as husband and wife, but for the concealment of those relations for an indefinite period.

By the agreement this mode of life was to continue for an indefinite period, " until he should be willing to take her to his own home." Read in the light of the other averments of this complaint, this seems to mean until such time as he should be willing to acknowledge her as his wife. As the price of her consent to live in this manner, whether for a short or long period, she was to receive $10,000.

Assuming that she commenced the fulfillment of her part of the contract immediately after it was entered into, she so lived for the period of about one year, when, upon his death, his entire estate is alleged to have been valued at $15,000, one half of which, if the allegations of the complaint are true, she is entitled to receive under the statute of distribution, irrespective of the question of the validity of this agreement.

This contract set forth in the second amended complaint is clearly not one of those which, though made directly between husband and wife, will be enforced in equity. By its terms the husband and wife were voluntarily to live apart, not only without adequate cause, but in a manner and for purposes which are against good morals and the public welfare.

The demurrers to the first and second amended complaints were properly sustained.

There is no error.

In this opinion the othes judges concurred.