NOTICE

Decision filed 02/02/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220648-U

NO. 5-22-0648

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MAURICE G. MINER, | ) | Petition for Direct Administrative |
| | ) | Review of an Order of the Illinois |
| Petitioner-Appellant, | ) | Human Rights Commission. |
| | ) | |
| v. | ) | Charge No. 21SF1022 |
| | ) | EEOC No. 21BA10443 |
| ILLINOIS HUMAN RIGHTS COMMISSION, | ) | ALS No. 22-0173 |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS, | ) | |
| and ILLINOIS DEPARTMENT OF | ) | |
| CENTRAL MANAGEMENT SERVICES, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Vaughan and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The Illinois Human Rights Commission did not abuse its discretion in sustaining the Illinois Department of Human Rights' dismissal of the petitioner's charge of discrimination for lack of substantial evidence.

¶ 2    The petitioner, Maurice G. Miner, filed a charge of discrimination with the Illinois Department of Human Rights (Department) alleging that the State of Illinois, Department of Central Management Services (CMS) subjected Miner to unequal terms and conditions of employment on multiple dates due to his race. Miner appeals from a final order entered by the Illinois Department of Human Rights Commission (Commission) sustaining the Department's dismissal of Miner's charge of discrimination. For the reasons that follow, we affirm.

1

¶ 3                    I. BACKGROUND

¶ 4      Miner, a black male, has been employed by the State of Illinois, Department of Central Management Services (CMS) as a Janitor I since February 15, 2016. CMS provided programs, services, guidance, and support to Illinois executive agencies. Miner was assigned to perform custodial duties at the Illinois Department of Transportation (IDOT) District 8 Headquarters in Collinsville, Illinois, in the Collinsville Regional Office Building (CROB). Miner's position was covered under a collective bargaining agreement (CBA) between CMS and the Teamsters Downstate Illinois Employee Negotiating Committee. CMS's discipline policy provided that employees were subject to corrective discipline which progressively used counseling, warnings, and/or suspension, before discharge.

¶ 5      Keith Pigg was Miner's direct supervisor. Pigg supervised three additional janitors, including Terry Bowser, Cheryl Dinges, and Julie Stowmatt. Pigg reported to James Allen, until April of 2020. Pigg, Allen, Bowser, Dinges, and Stowmatt were white.

¶ 6      The Janitor I job description included a breakdown of job duties. Thirty percent of a Janitor I's time was allocated to completing a variety of manual tasks in the care, sanitation, and maintenance of the facility, such as vacuuming, mopping, sweeping, etc. Twenty-five percent of the time was allocated to maintaining restrooms. Fifteen percent of the time was allocated to sweeping, shoveling, and cleaning walkways to keep free of debris, including raking leaves and assisting staff in keeping the outside in an orderly condition. Additional duties included responding to work orders, making minor repairs and adjustments, and any extra assignments that might arise. Miner was assigned specific daily tasks based on the day of the week.

¶ 7      On December 6, 2020, Miner filed a multiple count charge of employment discrimination against CMS based on his race and retaliation, also related to his race. The Department investigated

2

Miner's charge and filed an investigation report on February 28, 2022. The investigation addressed Miner's evidence of discrimination, CMS's evidence, and Miner's rebuttal, for each count.

¶ 8                              A. 15-day Suspension

¶ 9     Miner alleged that he was subject to unequal terms and conditions due to his race from April 25, 2020, through May 9, 2020, when Miner was placed on a 15-day suspension. The 15-day suspension was based on a March 4, 2020, incident of "insubordination" for engaging IDOT human resources on their recycling policy; a March 4, 2020, incident of "unauthorized absence" because of an unauthorized lunch break; and a March 6, 2020, incident of "failure to perform a duty" for not collecting piles of leaves within a reasonable amount of time. According to Miner, the reasons provided for the 15-day suspension were false.

¶ 10                             1. Insubordination

¶ 11     Miner was assigned the task of emptying the recycling on Fridays. Miner had been directed to discard recycling without rummaging through the contents. On September 3, 2019, Miner received a written notice from Pigg to refrain from taking large bags of ice from the commons area; to follow the daily work schedule; and to stop searching through the recycling bins before discarding the contents. On September 6, 2019, Miner received another written notice from Pigg that Miner was tasked with emptying the recycling bins, without sifting through the bins. Miner was placed on a three-day suspension from November 22, 2019, through November 24, 2019, for failing to follow a directive.

¶ 12     On December 13, 2019, Pigg accused Miner of refusing to return to work after multiple requests. Miner, instead of returning to work, was taking photographs with his cell phone, and questioned IDOT employees on IDOT's recycling policy. Miner was directed to refrain from engaging with IDOT employees and was required to follow the CMS policies on recycling. Miner

3

received a seven-day suspension on January 27, 2020, for refusing multiple requests to return to work on December 13, 2019.

¶ 13 Miner submitted three written grievances to CMS related to the task of disposing of "protected" or "confidential" information to CMS. The three grievances filed on December 4, 2019, December 18, 2019, and January 13, 2020, were denied on April 14, 2020.

¶ 14 On March 4, 2020, Miner engaged with the IDOT human resources manager in a conversation about their recycling. Pigg claimed that Miner ignored a directive previously issued requiring Miner to stop contacting IDOT employees regarding the recycling.

¶ 15 2. Unauthorized Absence

¶ 16 On March 4, 2020, Miner was in the Land Act area of the building taking a lunch break 15 minutes after his scheduled lunch break should have ended. IDOT employees had previously complained that Miner was using IDOT employee's office equipment during his breaks. Miner asserted that his coworker, Dinges, was allowed to take her break in the Land Act area. Miner, however, was not allowed to take breaks outside of designated areas because of the prior complaints against Miner by IDOT.

¶ 17 3. Failure to Perform a Duty

¶ 18 On March 6, 2020, Miner was directed to collect two piles of leaves at the front entrance after his lunch break ended. Miner finished cleaning the leaves at 1:51 p.m. CMS claimed that the job should have taken less than 30 minutes. Miner took two hours and 15 minutes to complete the task.

¶ 19 B. Time Off Request Denial

¶ 20 Miner alleged that he was subject to unequal terms and conditions due to his race on August 14, 2020, because his request for time off was denied. On July 31, 2020, Miner sent a text to James

4

Allen, Pigg's supervisor, and requested time off from work on August 3, 2020, and August 5, 2020. Allen responded, "What type of time?" Miner responded that he was not allowed to use "eTime." Allen texted back, "No worries what type of time are you using ABT or vacation?" Allen additionally texted Miner that he had previously offered to let Miner do "eTime," but Miner declined the offer and had filed a grievance. Allen asked Miner again for the type of time off requested and offered to help with "eTime" the following week. Miner responded about needing to use "eTime" eventually. Allen then texted, "Need to know type of leave requested or this will be last conversation and I will deny." Miner responded, "Let's see how the Grievance answers it." Allen responded, "time denied." Miner then texted, "When I submit it will be dr. appt and vacation. Is this o.k."

¶ 21    On August 11, 2020, Miner was notified of disciplinary conduct for refusing multiple direct orders from Allen where Miner had refused to provide the type of leave time requested. Miner, however, was not disciplined for the text exchange. Miner was also able to enter his time off and it was approved.

¶ 22                                      C. Denial of Overtime

¶ 23    Miner alleged that Allen subjected Miner to unequal terms and conditions due to his race on September 8, 2020, where Miner was not offered overtime. On September 8, 2020, Miner's workday ended at 2:30 p.m. James Allen required Miner to stay until 2:47 p.m. Allen refused to compensate Miner with overtime pay. Miner subsequently submitted a written grievance and Miner was compensated for 30 minutes of overtime.

¶ 24                                      D. Shift Assignment Change

¶ 25    Miner alleged that he was subject to unequal terms and conditions on September 9, 2020, due to his race, where Miner was informed of a shift change. Miner claimed that CMS issued a

5

"shift bid" on September 9, 2020, after his coworker retired. The "shift bid" allowed the janitorial staff to bid on the retired coworker's shift. Miner worked during the same shift as his retired coworker. The "shift bid" caused Miner to lose his shift that he had held since February 15, 2016.

¶ 26 CSA claimed that pursuant to the Collective Bargaining Agreement (CBA), shift assignments were reviewed annually, in January. Janitors were entitled to exercise seniority to retain their shift assignments or displace the least senior employee on his shift of choice within the position classification and within the employee's work location. Strowmatt had informed Pigg that she intended to bid on the early shift that Miner had been assigned. Strowmatt had worked for 35 years and had seniority over Miner's 5 years of employment. Pigg informed Miner in September of 2020 that Strowmatt would be granted the shift of her choice to allow Miner to plan for a potential shift change beginning in January of 2021.

¶ 27 E. Direct Order to Clean Restrooms

¶ 28 Miner alleged that he was subject to unequal terms and conditions due to his race on October 13, 2020, November 10, 2020, and November 17, 2020, when Miner received direct orders to clean the men's and women's common area restrooms at the CROB. Miner claimed that his coworkers were treated more favorably. He was not aware if they received similar direct orders. Pigg claimed that Covid-19 reduced staff availability, which caused changes to assigned duties. Cleaning restrooms was a normal janitorial duty as listed in the Janitor I job description. Pigg further claimed that job assignments were divided amongst the janitorial staff and Miner's coworkers were also required to clean restrooms.

¶ 29 F. Breakroom Limitations

¶ 30 Miner alleged that he was subject to unequal terms and conditions due to his race from November 30, 2020, through December 3, 2020, when he was not allowed to take a break

6

anywhere in the CROB. A statewide "Snowbird" training was conducted in the commons area breakroom at the CROB from November 30, 2020, through December 3, 2020. Miner was allowed to take work breaks anywhere that he wanted during the week of November 23, 2020, to November 27, 2020. On December 4, 2020, Miner requested to take his lunch break outside of the commons area breakroom due to Covid-19 concerns. Pigg denied Miner's request because he did not want Miner to access areas occupied by other State agencies to limit the spread of Covid-19. Pigg additionally claimed that IDOT employees had complained that Miner used their office equipment while he was on break.

¶ 31    On March 8, 2022, the Department dismissed all counts of Miner's charge of employment discrimination. Miner filed a request for review with the Commission on June 13, 2022. The Department filed a response to Miner's request for review on July 14, 2022, and recommended that the Commission sustain the dismissal of all counts.

¶ 32    The Commission considered Miner's request for review and the Department's response. The Commission found that Miner's claims related to the 15-day suspension failed because there was not a non-black janitor who was treated more favorably under similar circumstances. Additionally, CMS had articulated a legitimate, nondiscriminatory reason for the suspension. Miner had not established that CMS's reasoning for the suspension was false. Miner acknowledged that he had taken his lunch break in an unauthorized area because other janitors were allowed to take their break in that area, and Miner explained that he started his break late.

¶ 33    The Commission found that Miner had not suffered an adverse action regarding his leave request denial, overtime compensation, or directive to clean restrooms. The Commission found that Miner's claim regarding the shift change failed because CMS articulated a legitimate reason for its action where it followed the CBA. In addition, Miner's claim that he was not allowed to

7

take breaks outside of the breakroom failed because Miner did not establish that he suffered an adverse action that altered the terms and conditions of his employment, and CMS had articulated a legitimate reason for its actions.

¶ 34    On August 23, 2022, the Commission entered an order sustaining the dismissal of Miner's charge of employment discrimination. Service of the order was completed on Saturday, August 27, 2022.

¶ 35    Miner filed a petition with this court on September 30, 2022, within 35 days of service of the Commission's decision. Miner sought direct administrative review of the Commission's decision on eight of the counts regarding alleged incidents of racial discrimination. Miner abandoned the other counts, including all counts of retaliation based on his race.

¶ 36                              II. ANALYSIS

¶ 37    On appeal, Miner seeks review of the Commission's order which sustained the dismissal of the charge alleging racial discrimination. Miner specifically argues that the Commission erred in sustaining the final order of lack of substantial evidence where CMS issued a 15-day suspension due to his race regarding "insubordination" for engaging IDOT human resources on a recycling policy; "unauthorized absence" for an unauthorized lunch break; and the "failure to perform a duty" for failing to collect piles of leaves within a reasonable amount of time. Miner additionally argues that the Commission erred in sustaining the final order for lack of substantial evidence where CMS discriminated against Miner by denying leave time request, refusing to compensate Miner for overtime, proposing a shift change, directing Miner to clean additional restrooms, and denying breaks outside of the commons area breakroom, due to his race.

¶ 38    The Illinois Human Rights Act provides that it is a civil rights violation for an employer to commit acts of unlawful discrimination. 775 ILCS 5/2-102(A) (West 2022). Unlawful

8

discrimination includes "discrimination against a person because of his or her actual or perceived: race, *** age, *** [or] disability." 775 ILCS 5/1-103(Q) (West 2022).

¶ 39    Upon the filing of a charge of discrimination, the Department must investigate the allegations set forth in the charge to determine whether those allegations are supported by substantial evidence. 775 ILCS 5/7A-102(C)(1) (West 2022). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2022). If the Department determines that there is no substantial evidence to support the allegations, the Department must dismiss the charge. 775 ILCS 5/7A-102(D)(3) (West 2022). The petitioner may seek review by the Commission of the dismissal. 775 ILCS 5/7A-102(D)(3) (West 2022). "When a request for review is properly filed, the Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request." 775 ILCS 5/8-103(B) (West 2022). If the Commission sustains the dismissal, the petitioner may seek review in the appellate court. 775 ILCS 5/8-111(B)(1) (West 2022).

¶ 40    The appellate court reviews the final order of the Commission, not the Department's decision. *Marinelli v. Human Rights Comm'n*, 262 Ill. App. 3d 247, 253 (1994). The Commission's review of the Department's dismissal of an action for lack of substantial evidence is "essentially prosecutorial, *i.e.*, whether there is sufficient evidence to prosecute the charge." *Pence v. Illinois Human Rights Comm'n*, 2020 IL App (3d) 190384, ¶ 27. We review the Commission's decision to sustain the dismissal under the abuse of discretion standard, and we will not disturb its decision unless it is arbitrary or capricious. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious where it contravenes the legislature's intent,

9

fails to consider a critical aspect of the problem, or offers an explanation so implausible that it cannot be regarded as the agency's expertise. *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 41    "To establish a *prima facie* case of employment discrimination, the petitioner must first show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably." *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 919 (2010).

¶ 42    An adverse action is material when the terms and conditions of the employee's job are significantly altered, such as a reassignment to a position with significantly different responsibilities, or a substantial change in benefits. *Owens*, 403 Ill. App. 3d at 919. Minor and trivial employment actions would not form the basis for a discrimination suit. *Owens*, 403 Ill. App. 3d at 920. Oral and written reprimands alone do not alter the terms and conditions of an employee's job and are not considered adverse employment actions for the purposes of establishing a *prima facie* case of employment discrimination. *Owens*, 403 Ill. App. 3d at 920.

¶ 43    Once the petitioner establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate reason for its decision. *Lalvani v. Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the burden shifts back to the petitioner to prove that the employer's reason was a pretext of unlawful discrimination. *Zaderaka v. Human Rights Comm'n*, 131 Ill. 2d 172, 179 (1989). The petitioner must demonstrate that the articulated reason: (1) has no basis in fact; (2) did not actually motivate the employer's decision; or (3) was insufficient to motivate the employer's decision. *Sola v. Human Rights Comm'n*, 316 Ill. App. 3d 528, 537 (2000).

¶ 44                                    A. 15-Day Suspension

¶ 45    We first address Miner's arguments regarding the 15-day suspension. Miner argues that his employer subjected him to unequal terms and conditions where he was suspended for 15 days because of his race after he engaged IDOT employees regarding their recycling policy; had taken a late lunch break in an unauthorized area; and for failing to timely collect two piles of leaves. Miner is a member of a protective class due to his race, and the 15-day suspension was an adverse employment action. Miner, however, did not identify a similarly situated, non-black janitor who was treated more favorably.

¶ 46    CMS, additionally, presented legitimate reasons for the 15-day suspension. Miner was on break at an unauthorized time and place; Miner continued to question IDOT employees on their recycling policy after he was directed to refrain from engaging IDOT employees; and Miner did not finish an assignment timely. Miner has not demonstrated that the articulated reasons for his discipline (1) have no basis in fact; (2) did not actually motivate the employer's decision; or (3) was insufficient to motivate the employer's decision. See *Sola*, 316 Ill. App. 3d at 537. Miner has not disputed the time and place of his lunch break, that he engaged with IDOT employees, or that he was untimely in completing his raking assignment. Miner attempted to justify the time and place of his lunch break by claiming he should be allowed to take his break where other janitors were allowed. Miner's argument, however, does not demonstrate that he was not on break at an unauthorized time at an unauthorized location. The Commission did not abuse its discretion in sustaining the dismissal of Miner's charge of discrimination for lack of substantial evidence regarding the 15-day suspension.

¶ 47                           B. Time Off Request Denial

¶ 48     Miner argues that he was discriminated against where CMS denied Miner's request for time off because of his race. Miner was notified of disciplinary conduct for refusing to respond to multiple requests to provide the specific type of time off requested. The pre-disciplinary charges were, however, dropped after Miner provided the requested information. The Commission did not abuse its discretion in sustaining the dismissal of this count where Miner has not demonstrated that he suffered an adverse action.

¶ 49                              C. Denial of Overtime

¶ 50     Similarly, Miner has not demonstrated that he suffered an adverse action regarding his argument that he was discriminated against where he was not paid overtime due to his race. CMS compensated Miner with overtime pay after he filed a written grievance. The Commission did not abuse its discretion in sustaining the dismissal of this count where Miner has not demonstrated that he suffered an adverse action.

¶ 51                           D. Shift Assignment Change

¶ 52     Miner argues that he was discriminated against based upon his race where CMS had informed him that the time of his shift had changed. For the first time on appeal, Miner argues that the shift change was an adverse action which caused a significant impact on his life and livelihood where he was no longer able to pick up his special needs children from school. As Miner did not raise this issue during the administrative proceedings, he has waived his argument that the shift change was an adverse action which caused a significant impact on his life. See *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 493 (1996).

¶ 53     CMS, additionally, provided a legitimate reason for the change of shift times. Under the CBA, shift preferences were governed by seniority. Miner's coworker, who had 30 years more

12

seniority than Miner, requested to move to Miner's shift pursuant to the CBA. Miner has not demonstrated that the articulated reasons by CMS for the shift change had no basis in fact; did not actually motivate the decision; or were insufficient to motivate the decision. The Commission did not abuse its discretion in sustaining the dismissal regarding the shift assignment change claim where CMS provided a legitimate reason for the shift change and Miner did not prove that the reason was a pretext of unlawful discrimination.

¶ 54                         E. Direct Order to Clean Restrooms

¶ 55    Miner argues that CMS discriminated against him because of his race by directing Miner to clean restrooms in the common area. The Janitor I job description includes cleaning restrooms. The task of cleaning restrooms was included in Miner's duties as Janitor I. Miner was not required to perform any duty outside of the scope of his job. As such, Miner has not established that he suffered an adverse action. Additionally, CMS articulated a legitimate reason for its actions where job assignments were modified due to Covid-19. Miner's coworkers also were required to clean restrooms and had received new job assignments. The Commission did not abuse its discretion in sustaining the dismissal regarding this claim.

¶ 56                         F. Breakroom Limitations

¶ 57    Miner further argues that he suffered an adverse employment action based on his race because he was required to take his breaks in the breakroom. Miner has not demonstrated that he suffered an adverse action that altered the terms and conditions of employment by taking breaks in the designated breakroom. Additionally, Miner has not demonstrated that the reasons articulated by CMS for limiting where Miner could take his break had no basis in fact; did not actually motivate the decision; or were insufficient to motivate the decision. CMS required Miner to take breaks within the designated area because IDOT employees had complained that Miner was using

13

their office equipment. Miner has not demonstrated that the reason for requiring breaks in the designated area was a pretext of unlawful discrimination. The Commission did not abuse its discretion in sustaining the dismissal of Miner's charge of discrimination for lack of substantial evidence.

¶ 58                                      III. CONCLUSION

¶ 59    Accordingly, we affirm the final order of the Commission sustaining the Department's dismissal of the petitioner's charge of discrimination for lack of substantial evidence.

¶ 60    Affirmed.