# GREAT COUNTRY BANK *v.* NICHOLAS
# PASTORE ET AL.
# (SC 15600)

Callahan, C. J., and Borden, Katz, McDonald and Peters, Js.

Argued April 29—officially released July 1, 1997

*William H. Clendenen, Jr.,* with whom, on the brief, was *Nancy L. Walker,* for the appellants (named defendant et al.).

*Nancy L. Bohan,* with whom, on the brief, was *Jody W. Menon,* for the appellee (substitute plaintiff Wilshire Funding Corporation).

### Opinion

KATZ, J. The dispositive issue in this appeal is whether the trial court properly granted the plaintiff mortgagee's motion for summary judgment in an action to foreclose two mortgages, when the defendant mortgagors' objection to summary judgment was accompanied by an affidavit alleging that certain sums paid into a lockbox had not been accounted for by the plaintiff in determining whether the mortgagors were in default. We conclude that the affidavit was insufficient to show that a genuine issue of material fact existed to defeat the motion for summary judgment and, therefore, we affirm the judgment of the trial court.

The following facts are undisputed. In November, 1987, the defendants Nicholas A. Pastore and Geraldine Pastore,[1] borrowed $1.2 million from the plaintiff, Great Country Bank,[2] securing the note with a first mortgage

---

[1] Thirteen other parties were also named as defendants in the plaintiff's complaint by virtue of various attachments, liens and lease agreements involving the Pastores' real property that is subject to the mortgages at issue in this case. Hereinafter, all references to the defendants are to Nicholas and Geraldine Pastore.

[2] Great Country Bank was the original plaintiff in this action. Centerbank, as successor in interest to Great Country Bank, was substituted as plaintiff on April 2, 1996. On March 7, 1997, First Union Bank of Connecticut (First

covering commercial real property owned by the defendants and located at 1315–1317 and 1321 Boston Post Road in Madison (Madison property). Also on November 19, 1987, Nicholas Pastore, doing business as Pips, Inc., borrowed an additional $300,000 from the plaintiff, securing that note with a first mortgage covering residential real property owned by the defendants and located at 261 Fort Hale Road in New Haven. In 1994, the defendants defaulted on both notes and the plaintiff exercised its right to accelerate the indebtedness and to institute a foreclosure action. By settlement agreement dated April 12, 1994, the plaintiff and the defendants agreed to certain modifications of the notes. Included in the settlement was a lockbox arrangement in which all rents from the Madison property were to be deposited directly to a post office box in Ansonia, to which only the plaintiff would have access. Under the agreement, payments to the town of Madison for current and delinquent property taxes were to be paid out of the remainder of the lockbox proceeds after those proceeds had been applied to the defendants' approved expenses for the properties and outstanding indebtedness to the plaintiff.

On June 9, 1995, the plaintiff brought this action seeking strict foreclosure on both mortgages, claiming that the defendants had defaulted on their obligation to pay taxes to the town of Madison. Pursuant to a blanket order issued by *Hon. Joseph A. Licari, Jr.*, administrative judge for the judicial district of New Haven, covering all foreclosure actions in the judicial district, the action was referred to *Hon. Donald W. Celotto*, judge

Union) moved for a continuance of oral argument, claiming that it was the successor in interest to Centerbank. That motion was granted, but First Union was never officially substituted for Centerbank. Prior to oral argument in this court, Wilshire Funding Corporation (Wilshire) moved to be substituted as plaintiff/appellee, stating that it had purchased the subject note of the underlying foreclosure action. That motion was granted and Wilshire was allowed to defend this appeal.

trial referee (trial court), who presided over this action for the duration of the proceedings. The defendants answered the complaint, raising three special defenses.[3] On February 13, 1996, the plaintiff moved to strike the special defenses, claiming that the allegations were insufficient to constitute defenses to the foreclosure action. The plaintiff also moved for summary judgment as to the defendants' liability. The trial court granted the motion to strike on March 15, 1996. On March 20, 1996, the defendants filed a notice of appeal and reservation of right to appeal the granting of the motion to strike. On March 22, 1996, the defendants filed an amended answer and special defenses.

On March 29, 1996, the trial court granted the plaintiff's motion for summary judgment because the defendants' opposition to that motion had not been accompanied by specific, admissible evidence demonstrating the existence of a dispute as to any material fact. Thereafter, on May 10, 1996, the trial court granted the plaintiff's motion for judgment of strict foreclosure and rendered judgment thereon for the plaintiff. The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the defendants claim that the trial court: (1) lacked jurisdiction to decide the plaintiff's motion to strike and motion for summary judgment; (2) improperly granted the plaintiff's motion to strike based upon an assessment of the merits of the defenses, rather than their legal sufficiency; (3) improperly granted the

---

[3] In their special defenses, the defendants claimed that the plaintiff: (1) had failed to credit payments properly and to account properly for those payments; (2) had breached its duty of good faith and fair dealing by contacting and negotiating with prospective buyers of the defendants' property; and (3) based on the facts and circumstances of the case, should be denied the equitable remedy of foreclosure.

plaintiff's motion for summary judgment because there was a genuine issue of material fact in that the defendants believed that sufficient moneys had been paid into the plaintiff's lockbox to cover the alleged tax deficiencies; and (4) improperly rendered a judgment of strict foreclosure without determining whether certain late charges had been applied unlawfully. We conclude that the trial court had subject matter jurisdiction over the action and acted properly in granting the plaintiff's motion for summary judgment. Accordingly, we affirm the judgment of the trial court.

I

The defendants first claim that the trial court lacked the authority to decide the issues raised in this appeal.[4] Specifically, the defendants assert that the authority granted a judge trial referee by virtue of General Statutes § 52-434[5]

---

[4] The validity of the judge trial referee system depends upon strict compliance with General Statutes § 52-434, the statute creating that system, so that the judge trial referee "does not encroach upon, [or] unconstitutionally compete with, other constitutional courts." *Monroe* v. *Monroe*, 177 Conn. 173, 180, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). The defendants contend that, because § 52-434 was not followed, the judge trial referee unconstitutionally encroached upon the jurisdiction of the Superior Court. We conclude that, because there was substantial compliance with the statute, the constitutionality of the system is not at issue.

[5] General Statutes § 52-434 provides in pertinent part: "State referees. (a) Appointment of retired judges and members of the bar. Cases referred. (1) Each judge of the Supreme Court, each judge of the Appellate Court, each judge of the Superior Court and each judge of the Court of Common Pleas who ceases or has ceased to hold office because of retirement other than under the provisions of section 51-49 and who is an elector and a resident of this state shall be a state referee for the remainder of his term of office as a judge and shall be eligible for appointment as a state referee during the remainder of his life in the manner prescribed by law for the appointment of a judge of the court of which he is a member. The Superior Court may refer any civil, nonjury case or with the written consent of the parties or their attorneys, any civil jury case pending before the court in which the issues have been closed to such a state referee who shall have and exercise the powers of the Superior Court in respect to trial, judgment and appeal in the case. The Superior Court may, with the consent of the parties or their

and Practice Book § 430[6] does not include the authority to decide pretrial motions such as a motion to strike or a motion for summary judgment. We are not persuaded.

At this time it is useful to recall the history and role of the judge trial referee in our judicial system. This history demonstrates the referees' importance to the functioning of the judicial branch and provides the proper perspective by which to view their authority.

"It appears that the position of . . . referee was first created by the General Assembly in 1889, when retiring Chief Justice John D. Park was appointed a . . . referee to hear and report the facts of any case referred to him. Public Acts 1889, c. 249, § 1. Various other indi-

attorneys, refer any criminal case to such a state referee who shall have and exercise the powers of the Superior Court in respect to trial, judgment, sentencing and appeal in the case. . . .

"(b) Judge trial referees. The Chief Justice may designate, from among the state referees, judge trial referees to whom criminal and civil cases and juvenile matters may be referred. Criminal cases and civil cases of an adversary nature shall be referred only to state referees who are designated as trial referees. Juvenile matters shall be referred only to trial referees who are specifically designated to hear juvenile cases. No such designation may be for a term of more than one year. . . ."

Although there were changes made to § 52-434 three times since 1995, when this action was instituted; see Public Acts 1995, No. 95-80 (deleted requirement of written consent for referral of criminal cases in subsection [a]); Public Acts 1995, No. 95-225 (authorized referral of juvenile matters to trial referees specifically designated to hear juvenile cases in subsection [b]); and Public Acts 1996, No. 96-37 (changed "state trial referee" to "judge trial referee"); the changes were technical, not substantive. For purposes of this opinion, references to § 52-434 are to the 1997 revision.

[6] Practice Book § 430 provides in relevant part: "In addition to matters required to be referred to a trial referee, the judicial authority may refer any civil nonjury case or, with the written consent of the parties or their attorneys, any civil jury case, pending before such court, in which the issues have been closed, to a trial referee, who shall have and exercise the powers of the superior court in respect to trial, judgment and appeal in such case. Any case referred to a trial referee shall be deemed to have been referred for all further proceedings and judgment, including matters pertaining to any appeal therefrom, unless otherwise ordered before or after the reference. The court may also refer to a trial referee any motion for summary judgment and any other pretrial matter in any civil nonjury or civil jury case."

viduals were appointed referees by public and special act, in the years following, but it was not until 1919 that the General Assembly generalized the office. Public Acts 1919, c. 296, § 22, provided that each Supreme and Superior Court judge on attaining the age of seventy years should be a . . . referee and when appointed might 'hear and report cases to the [S]uperior [C]ourt.' In 1921, referees were authorized to hold hearings in county courthouses, have a sheriff in attendance, subpoena witnesses, tax costs 'in the same manner as similar costs are taxed by the judges of the [S]uperior [C]ourt' and punish for any act of contempt committed in their presence while engaged in such hearings 'in the same manner and to the same extent as judges of the [S]uperior [C]ourt.' Public Acts 1921, c. 23. . . . It seems clear that even before the added provisions of the 1965 constitution became effective and while no judge was constitutionally 'capable' of continuing to hold his office after attaining the age of seventy years, a . . . referee holding a hearing was recognized as a special tribunal, even then authorized to exercise some of the powers of the referring court and to exercise certain authority 'to the same extent' as judges of the Superior Court." *Florida Hill Road Corp.* v. *Commissioner of Agriculture,* 164 Conn. 360, 365–66, 321 A.2d 856 (1973).

Judge trial referees "do not sit by specified terms or sessions but hear cases by special assignments. Many of these cases are long and complicated and the hearings continue over an extended period. The less formal and more elastic method of their hearings is in contrast with the more rigid requirements which must obtain in a regular, continuous, daily trial in court. They serve the very practical purpose of relieving the court's crowded dockets of matters which can be more readily and conveniently tried in that manner. *Housing Authority* v. *Pezenik,* 137 Conn. 442, 445, 78 A.2d 546 [1951]." *Florida*

*Hill Road Corp.* v. *Commissioner of Agriculture,* supra, 164 Conn. 367.

"This court has, on several occasions since 1965, reviewed, with approbation, the role of [judge trial] referees. *Florida Hill Road Corporation* v. *Commissioner of Agriculture,* [supra, 164 Conn. 365–66], describes the history of the position of . . . referee and concludes . . . that such a referee 'is not a "judge of the [S]uperior [C]ourt or the [C]ourt of [C]ommon [P]leas" but is sui generis, [and] sits as a special tribunal.' See also *Prince* v. *Sheffield,* 158 Conn. 286, 291, 259 A.2d 621 (1969), and *Harbor Construction Corporation* v. *D. V. Frione & Co.,* 158 Conn. 14, 16, 255 A.2d 823 (1969). The [judge trial] referee system, as a special tribunal, does not encroach upon, and does not unconstitutionally compete with, other constitutional courts. On the contrary, as we noted in *Florida Hill Road Corporation* [v. *Commissioner of Agriculture,* supra, 367], [judge trial] referees 'serve the very practical purpose of relieving the court's crowded dockets . . . .' " *Monroe* v. *Monroe,* 177 Conn. 173, 180, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). With this history in mind, we turn now to the defendants' claims.

Relying on the language of § 52-434 (a), the defendants argue that in order for the action to have been properly before a judge trial referee: (1) there must have been a specific referral of the case by the Superior Court to the referee; (2) the issues in the case must have been closed; and (3) the referral must have been only for the purposes of trial, judgment or appeal. The defendants further argue that Practice Book § 430 conflicts with § 52-434, insofar as § 430 appears to grant authority to a judge trial referee to determine matters not pertaining to trial, judgment and appeal, and therefore, to the extent that it conflicts, is invalid. We dis-

agree with the defendants' reading of the statute and the rule of practice.

Initially, we note that nothing in the plain language of either § 52-434 or § 430 forbids the type of blanket referral used by the Superior Court in this case to refer all foreclosure actions to a judge trial referee. The language covering the judicial authority's right to refer is permissive, and includes no specific instructions as to how such referrals are to be made. Practice Book § 430 does provide, however, that "[t]he clerk shall give notice to each referee of a reference and note in the court file the date of issuance of the notice. . . ." The defendants claim that because the file disclosed no such referral, the trial court could not have had a proper referral and, therefore, had no authority to hear the case. We are not persuaded. Although the instruction to the clerk in § 430, by the use of the word "shall," gives the appearance that a notation in the file was mandatory to perfect a referral, a more reasonable interpretation of the section is that it is a directory instruction regarding a ministerial function. See *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 446, 685 A.2d 670 (1996) (if provision is designed to promote order, system and dispatch in proceedings, provision is directory).[7] Accordingly, we conclude that the clerk's failure specifically to note the referral to a judge trial referee in the court file did not deprive Judge Celotto of the authority to hear the case.

The defendants argue, however, that even if the blanket order had been appropriate, it was inapplicable to

---

[7] In addition, we note that, just as "[t]he evident purpose of the statutes and rules relating to the divisions of the Superior Court was not to impose any jurisdictional limitation on judges but to achieve greater efficiency in the administration of the judicial department"; *Savage* v. *Aronson*, 214 Conn. 256, 262, 571 A.2d 696 (1990); the evident purpose of Practice Book § 430 was to extend the jurisdiction of the judge trial referee, and not to create or to limit his or her jurisdiction.

their case because Judge Celotto's term had expired after the blanket order and referral, but before he actually heard the case. They contend that, in order to confer authority on Judge Celotto to preside over their case, the administrative judge was required to reissue the referral after Judge Celotto's reappointment. We disagree. Although we recognize that there may be instances when a referral may be affected by the timing of a judge trial referee's term, we are not prepared to say that whenever a judge trial referee is reappointed after the expiration of her or his term, all earlier orders or referrals in pending cases pertaining to that referee must be reissued. Such a ruling would require that each time a judge trial referee is reappointed, all cases over which she or he may have been presiding must come to a halt to permit the reissuance of any orders or referrals. This very well could lead to an administrative log jam, an absurd consequence that the legislature could not have intended when it enacted the statutes setting the terms of judge trial referees. "It is . . . a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *State* v. *DeFrancesco*, 235 Conn. 426, 437, 668 A.2d 348 (1995). Because there was no gap in time between the expiration of Judge Celotto's term and his reappointment, we conclude that the blanket order issued by the administrative judge in this case provided the authority for the trial court to preside over the present case.

The defendants next argue that the referral order as it applied to this case was improper because the action was still in its pleading stages. They point to § 52-434 (a) (1), which provides in part that "[t]he Superior Court may refer any civil, nonjury case or with the written consent of the parties or their attorneys, any civil jury case pending before the court in which the issues have

been closed to such a state referee who shall have and exercise the powers of the Superior Court in respect to trial, judgment and appeal in the case. . . ." The defendants contend that because the issues were not closed in their case, the case was not properly before a judge trial referee. The defendants' reliance on this language is misplaced. It is clear from the plain language of § 52-434 (a) (1) that the adjectival phrase "in which the issues have been closed" serves to modify only the preceding noun phrase "any civil *jury* case pending before the court." (Emphasis added.) Moreover, this construction of the statute is reinforced by Practice Book § 430, which repeats the language of the statute but sets off the phrase at issue with commas, so as to make its application obvious. See also *Girard* v. *Weiss*, 43 Conn. App. 397, 406, 682 A.2d 1078, cert. denied, 239 Conn. 946, 686 A.2d 121 (1996). Because this was a nonjury case, it is irrelevant for the purpose of referral to a judge trial referee pursuant to § 52-434 whether the issues had been closed. Consequently, we need not decide whether the issues were in fact closed at the time of the referral.

The defendants' final argument as to the trial court's authority to hear the case is equally without merit. They contend that the trial court had no authority to rule on the motion to strike or the motion for summary judgment because those motions were pretrial motions, and § 52-434 gives a judge trial referee authority over only trial, judgment and appeal. They further contend that, to the extent that Practice Book § 430 has been interpreted to allow a judge trial referee to decide summary judgment and other pretrial issues, it is in conflict with the statute and the statute must prevail. We see no such conflict. Indeed, it is clear that the language of § 430 merely puts into words the logical assumption that in order for a judge trial referee to decide issues of trial, judgment or appeal, she or he often must first decide

pretrial issues, many of which, if properly decided, could obviate the need for a trial.

## II

The defendants' second claim on appeal is that, when granting the plaintiff's motion to strike the defendants' special defenses; see footnote 3 of this opinion; the trial court improperly considered the merits of those defenses. The plaintiff argues in response that the defendants waived their right to appeal this issue when they filed an amended answer and special defenses. We agree with the plaintiff.

"[I]f [an answer] to which a [motion to strike] is sustained is voluntarily replaced by another, the substituted answer takes the place of the original one, which thereafter (unless the substitution was required by the order of the trial court) drops out of the case as fully as does a complaint for which another is substituted. *Goodrich* v. *Stanton*, 71 Conn. 418, 424 [42 A. 74 (1899)]; *Boland* v. *O'Neil*, [72 Conn. 217, 220, 44 A. 15 (1899)]." *Mitchell* v. *Smith*, 74 Conn. 125, 128, 49 A. 909 (1901). Although this court has concluded that in the case of a special defense such waiver is not automatic; *Nowak* v. *Nowak*, 175 Conn. 112, 122, 394 A.2d 716 (1978); if the amended special defenses are merely an attempt to correct defects in the original answer and special defenses, the amended answer serves to displace the answer that was stricken, and any right to appeal the stricken answer is waived. Id., 122–23. A close reading of the defendants' amended special defenses reveals that three of the six new special defenses were substantively the same as the original three special defenses, but had been rewritten so as to correct deficiencies revealed by the plaintiff's motion to strike. Accordingly, we conclude that the defendants waived any right they may have had to appeal the granting of the motion to strike.

## III

The defendants' third, and central, argument is that the trial court improperly granted the plaintiff's motion for summary judgment as to the defendants' liability. Specifically, the defendants contend that: (1) their belief that payments sufficient to cover their tax liabilities had been paid into the lockbox so that, consequently, they were not in default under the terms of the Madison and New Haven notes, created a genuine issue of material fact; (2) the trial court improperly shifted the burden of proof to the defendants, as the nonmoving party, to show that a genuine issue of material fact existed; and (3) the trial court improperly refused to allow a continuance for the defendants to conduct further discovery in order to determine if there was a genuine issue of material fact. The plaintiff argues in response that the trial court properly granted the motion for summary judgment because the defendants had made only general averments as to the existence of genuine issues of material fact, but had not offered any admissible evidence to establish such issues. In addition, the plaintiff contends that the trial court acted within its discretion in refusing to allow the defendants a continuance. We agree with the plaintiff.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim

by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 664–65, 646 A.2d 143 (1994). Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. See Practice Book § 381." (Internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202–203, 663 A.2d 1001 (1995). Requiring the nonmovant to produce such evidence does not shift the burden of proof. Rather, it ensures that the nonmovant has not raised a specious issue for the sole purpose of forcing the case to trial. See *Farrell* v. *Farrell*, 182 Conn. 34, 39, 438 A.2d 415 (1980) ("[i]ndeed, the whole summary judgment procedure would be defeated if, without any showing of evidence, a case could be forced to trial by a mere assertion that an issue exists").

The defendants' objection to the motion for summary judgment was accompanied by an affidavit from Nicholas Pastore, asserting that certain rental payments and fees had been deposited into the lockbox to which only the plaintiff had access, and that to Pastore's knowledge the plaintiff had not accounted properly for those payments. The affidavit further alleged that, to Pastore's knowledge, some $163,200 had been deposited into the lockbox by the tenants of the Madison property. The defendants did not offer any affidavits by the tenants, nor did they call any of the tenants to testify at the summary judgment hearing with regard to their payment of rents and other fees. At the hearing, Nicholas Pastore testified that his knowledge of the payments

was based upon communications with the tenants and on his personal knowledge of his leases with the tenants. The trial court properly identified this evidence as hearsay and, therefore, inadmissible for the purpose of defeating the motion for summary judgment.[8] Id., 39. Because the defendants offered no other evidence to support their general statements that there existed genuine issues of material fact, we conclude that the trial court properly granted the plaintiff's motion for summary judgment. Id.

The defendants contend, however, that they were unable to provide more sufficient evidence because the trial court improperly refused to allow them a continuance to conduct further discovery pursuant to Practice Book § 382.[9] They argue that had they been allowed to depose Raymond Kulka, the plaintiff's vice president, they would have been able to obtain financial information sufficient to show that they had fulfilled their obligations under the mortgages. The plaintiff argues in response that the motion for a continuance was merely a dilatory tactic and that the trial court acted well within its discretionary authority to deny the motion. We agree with the plaintiff.

In the absence of an abuse of discretion, a trial court's decision to deny a motion for continuance pursuant to Practice Book § 382 will not be interfered with by an appellate court. *Plouffe* v. *New York, New Haven &*

[8] By the defendants' own admission, their tax shortfall was somewhere between $175,000 and $226,540. Therefore, even if the defendants' claim that some $163,200 had been paid into the lockbox had been supported by admissible evidence, when viewing the evidence in the light most favorable to the nonmoving party, there was still no genuine dispute as to the defendants' default.

[9] Practice Book § 382 provides: "Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present facts essential to justify his opposition, the court may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

*Hartford R. Co.,* 160 Conn. 482, 490, 280 A.2d 359 (1971). If a party opposing summary judgment has had ample opportunity to procure the information necessary to defeat the motion, a trial court properly may deny a continuance. *Dorazio* v. *M. B. Foster Electric Co.,* 157 Conn. 226, 230, 253 A.2d 22 (1968). Furthermore, "[u]nder [§ 382], the opposing party must show by affidavit precisely what facts are within the exclusive knowledge of the [party to be deposed] and what steps he has taken to attempt to acquire these facts." Id. The defendants here did not indicate what attempts they had made to acquire the missing facts, other than to state that they had given notice to Kulka and the plaintiff of their intent to depose Kulka. Nor did they show how they had tried and had failed at other methods to acquire the information, thereby leaving them with the deposition as their only available avenue. Accordingly, we conclude that the trial court did not abuse its discretion in denying the continuance.

IV

In their final claim, the defendants argue that the trial court improperly rendered a judgment of strict foreclosure without determining whether certain sums included in the judgment had accrued before or after the plaintiff had accelerated the notes secured by the two mortgages. Specifically, the defendants contend that $5863.38 in late charges accrued after the notes had been accelerated and after the plaintiff had made a demand for payment, and that such accrual was improper as a matter of law.

Despite having cross-examined the plaintiff's primary witness at great length at the hearing regarding the plaintiff's motion for strict foreclosure, the defendants did not raise the issue of the late charges before the trial court. Had they wished to challenge those fees, they could have done so at that time. Absent special

circumstances, an appellate court will not review a claim of error that has not been brought to the attention of the trial court. *Cahill* v. *Board of Education*, 187 Conn. 94, 99, 444 A.2d 907 (1982). Under the facts of this case, we see no reason to review the defendants' claim on this issue.

The judgment is affirmed.

In this opinion the other justices concurred.