******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM P. RIDGAWAY, SR., ADMINISTRATOR
(ESTATE OF WILLIAM P. RIDGAWAY, JR.),
ET AL. *v.* MOUNT VERNON FIRE
INSURANCE COMPANY
(AC 37511)

Gruendel, Lavine and Sheldon, Js.*

*Argued March 3—officially released May 24, 2016*

(Appeal from Superior Court, judicial district of New London, Hon. Thomas F. Parker, judge trial referee.)

*Wesley W. Horton*, with whom was *Kimberly A. Knox*, for the appellants (plaintiffs).

*Robert B. Flynn*, with whom were *Dennis M. Carnelli* and *Joseph J. Andriola*, for the appellee (defendant).

*Opinion*

SHELDON, J. The plaintiffs, William P. Ridgaway, Sr., for himself individually as the father of his deceased son, William P. Ridgaway, Jr. (decedent), and as administrator of his son's estate, and Rita Grant, for herself individually as the decedent's mother, appeal from the judgment of nonsuit rendered against them by the trial court based upon their counsel's failure to comply with the court's order that they file a copy of a confidential settlement agreement in a related lawsuit, which counsel claimed to have prevented them from complying voluntarily with certain discovery requests filed in this case by the defendant, Mount Vernon Fire Insurance Company. The plaintiffs claim that the judicial authority that rendered the judgment of nonsuit lacked jurisdiction or authority to do so by reason of his status as a judge trial referee, and, that even if it had such jurisdiction and authority, it erred in rendering the challenged judgment of nonsuit against them because that sanction, as applied to them, was not proportional to their counsel's alleged violation. We reject the plaintiffs' claim that the judicial authority lacked jurisdiction or authority, as a judge trial referee, to render the judgment of nonsuit here at issue, but conclude that it abused its discretion in imposing that sanction against the plaintiffs because rendering a judgment of nonsuit against them was not proportional to their counsel's alleged noncompliance with the court's order. Accordingly, we reverse the judgment of the trial court.

The following factual and procedural history is relevant to this appeal. On April 16, 2000, the decedent died in an automobile accident resulting from the intoxication of the driver of the automobile, Anthony Sulls, who had been drinking with the decedent at the Silk Stockings Bar in Groton. On February 5, 2001, the plaintiffs filed a wrongful death action against Silk, LLC (Silk), as the owner and operator of the bar.[1] Five additional actions concerning insurance coverage disputes stemming from the underlying death of the plaintiffs' decedent were thereafter commenced. Those five additional actions, as set forth and described in the settlement agreement referenced herein, were as follows: *First Specialty Insurance Corp.* v. *Marion Reed et al.*, X04-CV-06-4035743 (action for declaratory judgment filed by Silk's liability insurer [coverage action]); *William P. Ridgaway, Sr. Administrator for the Estate of William P. Ridgaway* v. *Cowles & Connell of Connecticut, Inc. et al.*, X04-CV-03-4034704, and *Silk, LLC dba Silk Stockings* v. *Cowles & Connell of Connecticut, Inc. aka Cowles & Connell, Inc. et al.*, X04-CV-03-4034739 (actions filed against agents and brokers for allegedly failing to procure adequate coverage for Silk [agents and brokers actions]); *Silk, LLC dba Silk Stockings Bar* v. *Mount Vernon Fire Insurance Co.*, X04-CV-02-4034598; and *Estate of Ridgaway et al.* v. *Mount Vernon*

*Fire Insurance Company*, X04-CV-02-0563699.

As a result of mediation, a stipulated judgment was entered in the wrongful death action on March 22, 2011, in favor of the plaintiffs and against Silk in the amount of $1,000,000. Under the terms of that stipulated judgment, Silk agreed, in full satisfaction of its payment obligation thereunder, to assign to the plaintiffs all of its rights to and interest in insurance coverage, in connection with the decedent's death, under its excess and umbrella insurance policy issued by the defendant. The coverage action and the agents and brokers actions were also settled, and that settlement was memorialized in a document entitled, "Confidential Settlement Agreement and Specified Releases" (confidentiality agreement). The defendant was not a party to that settlement.

On June 7, 2011, the plaintiffs, who were represented by the Reardon Law Firm, P.C., filed this subrogation action by way of a three count complaint alleging that they had obtained a judgment against the defendant's insured in a separate personal injury action, but that the defendant had wrongfully denied coverage and refused to pay the judgment. The defendant filed an answer and special defenses, and a counterclaim seeking a declaratory judgment that the insurance policy did not cover the plaintiffs' judgment.

On September 26, 2013, the defendant filed a motion seeking an order to compel the plaintiffs to produce three documents: the transcript of the June 27, 2002 deposition of Judith Truax and two exhibits from the later February 12, 2009 deposition of the same deponent.[2] In that motion, the defendant explained that when it had requested those documents from the plaintiffs, counsel for the plaintiffs responded that: "Because the plaintiffs are subject to a confidentiality agreement, I will not be turning over any documents unless ordered to do so by the [c]ourt."

On October 3, 2013, the plaintiffs filed an objection to the defendant's motion and a cross motion for a protective order to prevent the defendant from compelling the production of the requested documents. In that motion, the plaintiffs "steadfastly" objected to the production of the requested documents, contending that "production of the documents could expose them to the risk of litigation for breaching [the aforementioned confidentiality] agreement." The plaintiffs argued, more particularly, as follows: "Production of the documents requested would cause the plaintiffs to violate the confidentiality agreement entered into with other parties in separate lawsuits. In this regard, any order by this court requiring production of these documents would invade matters that the parties to that agreement fully intended at the time of execution to remain forever confidential. If the plaintiffs produce the requested discovery documents, they could be exposing themselves to the risk of litigation for being in breach of contract." In that

same motion, the plaintiffs' counsel cited the Rules of Professional Conduct in support of his duty to "challenge any court order that he believes seeks unnecessary disclosure of confidential information." On those grounds, the plaintiffs asked that the defendant's motion for an order compelling production of the requested documents be denied, or, in the alternative, that the court issue a protective order so that those documents could not be discovered.

On October 8, 2013, the defendant filed a reply to the plaintiffs' objection to its motion for order to compel disclosure of the previously requested documents and an objection to the plaintiffs' cross motion for a protective order as to those documents. The defendant argued that the court should not rely on a confidentiality agreement to which neither it nor the defendant was privy as a basis for not ordering the production of, or granting a protective order with respect to, the documents at issue. The defendant explained in its motion that it had been a party to and its prior counsel had participated in the depositions at issue, but that prior counsel had misplaced the documents it was requesting from the plaintiffs. The defendant explained that it had sought copies of those documents from the court reporting agency that had transcribed the deposition, but was informed that the agency no longer had those documents in its possession.

On October 15, 2013, the plaintiffs filed a sur-reply to the defendant's October 8, 2013 reply memorandum. The plaintiffs argued in that pleading that the confidentiality agreement it had entered into with other defendants in the coverage lawsuits that arose from the wrongful death action was the basis for their objection to "the disclosure of the requested discovery documents or the terms and conditions of the confidentiality agreement to [the defendant], a nonparty [to that agreement], because of the risk that such disclosure would cause them to breach said confidentiality agreement." The plaintiffs argued: "[The defendant] expects the plaintiffs to cite to the specific language of the agreement that would serve to bar disclosure of the requested documents or to append the agreement to their briefs, which would then become public record, in order to prove that disclosure of the requested documents would cause them to violate the confidentiality agreement. These assertions are preposterous, as dissemination of the terms and conditions of the confidential agreement is precisely the kind of conduct that is prohibited when an agreement is confidential in nature. Citing to the specific language in the agreement that the plaintiffs claim precludes them from producing the requested discovery documents and/or appending the contents of the agreement for the world to see on the public docket would expose the plaintiffs to liability for breach of contract and would expose plaintiffs' counsel to liability for doing so." The plaintiffs proposed

that: "should the court require inspection of the confidentiality agreement before reaching a ruling on whether the requested discovery documents are subject to the provisions of the confidentiality agreement, then the plaintiffs would request an 'in camera' inspection of the agreement by the court only as the agreement is, itself, confidential, and may not be inspected by [the defendant] or any other nonparty to the agreement." (Emphasis omitted.) The plaintiffs also argued that the defendant, which was a party to the depositions at issue, but was not a party to the confidentiality agreement, should have had the documents that it was requesting or that it would have obtained them from another source that was not bound by the confidentiality agreement by which the plaintiffs are bound. Puzzlingly, the plaintiffs also argued that the deposition transcripts and exhibits were work product, and also that the defendant had not shown that "it cannot obtain these materials without undue hardship because . . . these materials are presumably readily available from the firm that formerly represented the defendant." The plaintiffs argued that the requested documents were thus also protected "by privilege."[3] The court never ruled on the proposal by the plaintiffs' counsel that its right to withhold the requested discovery should be decided on the basis of an in camera review of the confidentiality agreement.

More than four months later, on February 26, 2014, the court, *Hon. Thomas F. Parker*, judge trial referee, issued an order that: "[The] plaintiffs shall file a copy of the confidentiality agreement upon which [they rely] by March 7, 2014. Dollar amounts may be redacted from the copy filed." The plaintiffs did not comply with that order.

Accordingly, on March 14, 2014, the defendant filed a motion for nonsuit and other sanctions based upon the plaintiffs' failure to comply with the court's February 26, 2014 order to file a redacted copy of the confidentiality agreement upon which they were relying in their refusal to produce the documents that the defendant had previously requested. As legal grounds for its motion, the defendant relied upon Practice Book § 13-14, which allows for the imposition of sanctions when a party fails to comply with a discovery order. On April 10, 2014, the plaintiffs filed an objection to the motion for nonsuit, in which they claimed that the motion had become moot because they had complied with the court's order by faxing a redacted copy of the confidentiality agreement to counsel for the defendant on April 8, 2014. On April 28, 2014, the court summarily granted the defendant's motion for nonsuit.

On May 2, 2014, the defendant filed a reply to the plaintiffs' objection to its motion for nonsuit and sanctions for failure to comply with the court's February 26, 2014 order. The defendant stated therein that it had

received and reviewed the confidentiality agreement, and determined on that basis that "the plaintiffs had no valid basis for withholding the requested documents in the first place, and delayed the progress of discovery for six months without any good cause." In support of that argument, the defendant attached the subject confidentiality agreement as an exhibit. Referencing that exhibit, the defendant argued that the "agreement on which [the plaintiffs] relied for their confidentiality-based objection . . . in no way purports to restrict their ability to produce the requested documents. This conduct has caused unnecessary delays in this case. Plaintiffs' lack of basic courtesy to provide defense counsel with copies of . . . misplaced or lost deposition transcript and two exhibits from that deposition has resulted in an extraordinary waste of time and resources, necessitating this motion." The defendant thus asked the court to order the production of the documents at issue within ten days of the date of its ruling on the motion, and that a nonsuit enter if the plaintiffs failed to comply with such order of production. The defendant further requested that the court award it reasonable attorney's fees in connection with the preparation of the motion.

On May 8, 2014, although the court had previously granted the defendant's motion for nonsuit, it issued a motion for nonsuit. In its ruling, the court rejected the plaintiffs' claim that they had complied with the court's order to file the confidentiality agreement by faxing a redacted copy of that agreement to the defendant. The court found, to the contrary, that: "The [February 26, 2014] order is succinct, clear and unambiguous. There has not been a semblance of compliance."

On May 15, 2014, the plaintiffs responded to the court's ruling by filing three separate motions. First, they moved to seal the confidentiality agreement that they had attached to said motion and were lodging with the court, pursuant to Practice Book § 7-4B. The plaintiffs also filed a motion to reargue the defendant's motions for a judgment of nonsuit and for other sanctions, and a motion to open the judgment of nonsuit. In all three of those motions, the plaintiffs explained that on April 21, 2014, they had sent correspondence to the signatories of the confidentiality agreement stating their intention to disclose the requested documents within ten days absent any objection, and, in fact, that they did disclose those documents to the defendant on May 5, 2014. The plaintiffs further asserted: "Plaintiffs' counsel did not file a copy of the confidential settlement with the court due to confidentiality concerns. . . . Plaintiffs' counsel took steps to ensure the production of this document to counsel in the most efficient manner possible while still honoring their obligation under the confidential terms of that agreement." Also in each of those motions, the plaintiffs indicate that they were then lodging the confidentiality agreement with the

court pursuant to § 7-4B "in an effort to more fully comply with the court's order . . . ." (Citation omitted.)

On May 28, 2014, the defendant filed objections to the motion to reargue and the motion to open judgment. In those objections, the defendant argued that the entry of nonsuit should be upheld because: "[T]he agreement on which the plaintiffs relied . . . expressly states that its confidentiality and nondisclosure provision only applies '*except as required by law or court order.*' . . . As the plaintiffs were subject to this court's clear order that they file the agreement with the court, the plaintiffs' argument that they did not believe that they were allowed to file the agreement because of its confidentiality and nondisclosure provision is plainly disingenuous. Further, the agreement does not contain any language limiting the plaintiffs' ability to produce documents from their prior litigation, despite their earlier representation that providing the defendant with its requested documents would breach the agreement." (Citation omitted; emphasis in original.)

On June 2, 2014, the court held a hearing on the plaintiffs' motion to seal the confidentiality agreement, at which counsel for both parties presented oral argument. At the conclusion of the hearing, the court reserved judgment on the motion, indicating that it would rule after it had the opportunity to review the transcript of that hearing.

On June 3, 2014, the plaintiffs filed a second motion to seal, in which they asked the court to seal copies of the confidentiality agreement that had been filed with the court as attachments to three of the defendant's prior motions. In support of the second motion to seal, the plaintiffs argued: "As per the court's ruling on June 2, 2014, granting [the] plaintiffs' motion to seal . . . filed May 15, 2014, the court has found that the [confidentiality agreement] is a confidential document and should be sealed with the court. Therefore, the attachment of this document to the defendant's motions is in direct conflict with the court's ruling."[4] (Citation omitted.)

On June 4, 2014, the court denied the plaintiffs' motions to seal on the ground that the plaintiffs had failed to "set forth any reason to find that the plaintiffs' grounds for sealing outweigh the presumption that documents filed with the court shall be available to the public. Practice Book § 11-20A (a). . . . [N]either the [plaintiffs'] motion nor the [accompanying] memorandum [of law] articulate or even identify any interest for which sealing protection is sought. Nor does either document set forth any reason(s) the unidentified interest overrides the presumption that the document[s] be available to the public." The court ordered the plaintiffs to file the confidentiality agreement by June 12, 2014. On June 11, 2014, the plaintiffs complied with the court's

order and filed the confidentiality agreement, unredacted, with the court.

On June 9, 2014, the plaintiffs filed a supplemental memorandum of law in which they raised two new arguments in support of their previously filed motion to open judgment of nonsuit. They claimed that the court's February 26, 2014 order was ambiguous because it did not indicate where or how the confidentiality agreement was to be "filed," and that, pursuant to General Statutes § 52-434, a judge trial referee did not have jurisdiction or authority "to enter a judgment of nonsuit before trial because the pleadings had been closed and a jury claim filed, but no written consent [of the parties] was obtained." The plaintiffs also argued that the judgment of nonsuit should be opened in the interest of judicial economy because their action would otherwise be saved by the accidental failure of suit statute, General Statutes § 52-592. On June 18, 2014, the defendant filed an objection to the plaintiff's supplemental memorandum of law, essentially reiterating the arguments presented in its prior objection to the motion to open.

On June 20, 2014, the plaintiffs filed a second supplemental memorandum in support of their motion to open judgment of nonsuit in order "to reply to the vitriol and outrage espoused by defense counsel in his June 18, 2014 . . . opposition to their motion to open judgment upon nonsuit." The plaintiffs argued that regardless of "defense counsel's claimed anger and indignation," the judgment of nonsuit was not proportional to the alleged violation of the court's order since the defendant by then had received all the documents it had been requesting.

On August 19, 2014, the court held a hearing on the plaintiffs' motion to open judgment of nonsuit at which counsel for both parties presented oral argument. On December 16, 2014, the court issued a memorandum of decision denying the plaintiffs' motion to open judgment of nonsuit. This appeal followed.

I

The plaintiffs first claim that the motion for nonsuit and the ensuing motions to open and reargue should not have been heard by Judge Parker because of his status at the time as a judge trial referee. Specifically, the plaintiffs claim that because the pleadings were closed and the case had been claimed to the jury list as of April 10, 2014, but the case had not yet been referred to Judge Parker, and the parties had not consented to such a referral, that Judge Parker lacked jurisdiction or authority, as a judge trial referee, to render the judgment of nonsuit. We disagree.

"The scope of judicial authority is a matter of law over which we exercise plenary review. . . . To the extent that this inquiry involves examining . . . [statutory] provisions [and our] . . . rules of practice, it pre-

sents an issue of statutory interpretation over which we likewise exercise plenary review." (Citation omitted.) *Yeager* v. *Alvarez*, 302 Conn. 772, 778–79, 31 A.3d 794 (2011).

"The constitution of Connecticut, article fifth, § 6, as [amended by article eight, § 2] and General Statutes § 52-434 (a) make all retired Superior Court judges eligible for appointment as state referees. From among the eligible retired judges, appointments are made by the Chief Justice of the Supreme Court to the position of trial referee. General Statutes § 52-434 (a). In any case referred to a state constitutional referee, article fifth, § 6, as amended and General Statutes §§ 52-434a (a) and 52-434b (a) authorize the referee to exercise all the powers of the referring court. A similar authorization is contained in Practice Book § [19-3]."[5] (Citation omitted; footnote omitted.) *McCarthy* v. *Bridgeport*, 21 Conn. App. 359, 362–63, 574 A.2d 226, cert. denied, 215 Conn. 814, 576 A.2d 543 (1990).

Section 52-434 provides in relevant part: "(a) (1) . . . The Superior Court may refer any civil, nonjury case or with the written consent of the parties or their attorneys, any civil jury case pending before the court in which the issues have been closed to a judge trial referee who shall have and exercise the powers of the Superior Court in respect to trial, judgment and appeal in the case . . . . "

Section 52-434a further delineates the "[p]owers of referees," in relevant part: "(a) In addition to the powers and jurisdiction granted to state referees under the provisions of section 52-434, a Chief Justice or judge of the Supreme Court, a judge of the Appellate Court, a judge of the Superior Court or a judge of the Court of Common Pleas, who has ceased to hold office as justice or judge because of having retired and who has become a state referee and has been designated as a trial referee by the Chief Justice of the Supreme Court shall have and may exercise, with respect to any civil matter referred by the Chief Court Administrator, the same powers and jurisdiction as does a judge of the court from which the proceedings were referred. . . ."

"Judge trial referees do not sit by specified terms or sessions but hear cases by special assignments. Many of these cases are long and complicated and the hearings continue over an extended period. The less formal and more elastic method of their hearings is in contrast with the more rigid requirements which must obtain in a regular, continuous, daily trial in court. They serve the very practical purpose of relieving the court's crowded dockets of matters which can be more readily and conveniently tried in that manner." (Internal quotation marks omitted.) *Great Country Bank* v. *Pastore*, 241 Conn. 423, 428, 696 A.2d 1254 (1997).

The plaintiffs first argue that Judge Parker did not

have jurisdiction or authority to hear or adjudicate these motions because he was a referee.[6] In mounting this challenge, the plaintiffs have used the terms "jurisdiction" and "authority" interchangeably. It is axiomatic that those terms are not fungible. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and [to] determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004).

Here, §§ 52-434 and 52-434a clearly establish that a judge trial referee exercises the same jurisdiction as a judge of the Superior Court. Moreover, the statutes permit matters to be referred to judge trial referees with the written consent of the parties or their attorneys. It is axiomatic that subject matter jurisdiction cannot be conferred by agreement of the parties. Conversely, a judge trial referee cannot lack jurisdiction to hear a particular case simply because it is not referred to him or her. Thus, any limitations contained in our statutes or rules of practice regarding the types of cases that judge trial referees may be involved in do not implicate the jurisdiction of judge trial referees to hear certain of those cases, but, rather, concern their authority to do so.

The plaintiffs also claim that Judge Parker did not have authority to rule on the matters at issue because this case was not referred to him, as required by statute and Practice Book § 19-3. We can infer, however, that the case was referred to Judge Parker from the simple fact that he heard it. Moreover, our Supreme Court has explained that "[t]he language covering the judicial authority's right to refer is permissive, and includes no specific instructions as to how such referrals are to be made. Practice Book § [19-3] does provide, however, that '[t]he clerk shall give notice to each referee of a reference and note in the court file the date of issuance of the notice. . . .' " *Great Country Bank* v. *Pastore*, supra, 241 Conn. 431. "Although the instruction to the clerk in § [19-3], by the use of the word 'shall,' gives the appearance that a notation in the file was mandatory to perfect a referral, a more reasonable interpretation of the section is that it is a directory instruction regarding a ministerial function." Id. On that basis, the court concluded that "the clerk's failure specifically to note the referral to a judge trial referee in the court file did not deprive [that referee] of the authority to hear the case." Id. We likewise conclude that the absence of a notation in the file documenting the referral to Judge Parker did not deprive him of the authority to rule on the matters before him.

The plaintiffs also argue that even if the matter properly had been referred to Judge Parker, they had not consented to said referral, and their consent was required because the case had been claimed to the jury list on April 10, 2014. In addressing the issue of a party's consent to referral to a judge trial referee, our Supreme Court has held that parties "are deemed to have given their implicit consent to the referral by failing to raise their objection in a timely fashion." *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 251, 524 A.2d 610 (1987). It thus rejected the defendants' argument that they had timely objected to a referral because "[t]he defendants 'utterly neglected' to raise the issue of their lack of consent until after the hearing had ended and the referee had filed his report." The court noted that "[t]he appropriate time to object in this case would have been *at the time of the referral, or at least prior to the commencement of the hearing before the referee.*" (Emphasis added.) Id.

Here, the plaintiffs did not challenge Judge Parker's authority to adjudicate the matters at hand until June 9, 2014, in their supplemental memorandum of law in support of their motion to open judgment. That motion to open was not filed until more than three months after Judge Parker issued the order to file the confidentiality agreement and more than one month after the judgment of nonsuit had entered. By that point, Judge Parker had already issued the February 26, 2014 order, with which the plaintiffs had failed to comply and to which the plaintiffs did not respond in any other appropriate manner, such as asking for guidance as to how to maintain the alleged confidentiality of the confidentiality order. Between the February 26, 2014 order and the June 9, 2014 memorandum in which they finally challenged Judge Parker's authority to adjudicate the matters before him, the plaintiffs had submitted several filings to the court concerning the subject dispute, in none of which had they claimed that Judge Parker did not have authority in the matter. Given the untimeliness of their objection to Judge Parker's involvement in this case, we conclude, as the court did in *Bowman*, that the plaintiffs implicitly consented to his involvement.

II

The plaintiffs additionally claim that the trial court erred in rendering a judgment of nonsuit against them for their alleged failure to comply with the court's February 26, 2014 order to file a redacted copy of the confidentiality agreement. The plaintiffs claim that the court erred in denying their motion to open the judgment of nonsuit because (1) the order with which they did not comply was unclear, (2) they substantially complied with the order, and (3) the nonsuit was not proportional to their alleged noncompliance with the court's order. We agree that the sanction of the entry of a judgment of nonsuit was not proportional to the plaintiffs' non-

compliance with the court's order in this case.

"In ruling on a motion to open a judgment of nonsuit, the trial court must exercise sound judicial discretion, which will not be disturbed on appeal unless there was an abuse of discretion. . . . In reviewing the trial court's exercise of its discretion, we make every presumption in favor of its action." (Citation omitted.) *Biro* v. *Hill*, 231 Conn. 462, 467–68, 650 A.2d 541 (1994). To assess the propriety of the court's denial of the motion to open the judgment of nonsuit, we must examine the propriety of the court's imposition of that sanction under the circumstances presented.

"We . . . review the trial court's decision to determine whether it abused its discretion in granting the . . . motion for judgment of nonsuit. . . . Generally speaking, a nonsuit is the name of a judgment rendered against a party in a legal proceeding . . . when he is in default . . . in complying with orders of the court." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Rodriguez* v. *Mallory Battery Co.*, 188 Conn. 145, 149–50, 448 A.2d 829 (1982).

Here, in denying the plaintiffs' motion to open the judgment of nonsuit, the trial court explained, "The nonsuit was not entered for violation of a 'discovery order' as that term is commonly used in the case law. The court has not made a 'discovery order.' The nonsuit was entered for [the] plaintiffs' contemptuous refusal to comply with the court's order to file the confidentiality agreement, which confidentiality agreement [the] plaintiffs interjected as part of their efforts to thwart [the defendant's] legitimate request for the [subject deposition] materials." In so explaining, the court referred to Practice Book § 17-19, which provides in relevant part: "If a party fails to comply with an order of a judicial authority . . . the party may be nonsuited . . . by the judicial authority."

"Because the nonsuit here was a penalty for the plaintiff[s'] failure to [comply with the court's February 26, 2014 order to file a redacted copy of the confidentiality agreement], we apply the modified standard of review set forth by our Supreme Court in *Millbrook Owners Assn.*, *Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001), for claims challenging a trial court's order for sanctions. First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. . . . Second, the record must establish that the order was in fact violated. . . . Third, the sanction imposed must be proportional to the violation." (Internal quotation marks omitted.) *Burton* v. *Dimyan*, 68 Conn. App. 844, 846–47, 793 A.2d 1157, cert. denied, 260 Conn. 925, 797 A.2d 520 (2002).

Here, the plaintiffs claim that the subject order was not clear and unambiguous, that they substantially complied with that order, and that the judgment of nonsuit was not proportional to their alleged noncompliance with the order. At oral argument before this court, appellate counsel[7] for the plaintiffs essentially conceded their first two arguments, that the order was not clear and that they had substantially complied with it. That course was well taken, for there is little merit to either argument. It is clear from the court's order, and the filings leading up to that order, that the court's intent was to examine the confidentiality language itself to determine whether the plaintiffs' objection to the disclosure of the subject deposition transcripts was well founded. The plaintiffs' counsel never expressed a lack of understanding of the court's order; nor did they ever seek clarification of that order. The plaintiffs did not file the confidentiality agreement with the court, or take any other action in furtherance of compliance, by the March 7, 2014 deadline imposed by the court. Therefore, as their appellate counsel conceded at oral argument, "the court would have been perfectly justified in sanctioning counsel for not responding in some way by the . . . seventh of March." And so it did on April 28, 2014, by ordering a judgment of nonsuit. Unbeknownst to the trial court at the time of that ruling, however, was that the plaintiffs, in the interim, had sent the confidentiality agreement to the defendant, in what they now claim to have been compliance with the court's earlier order. It cannot reasonably be disputed, however, that an order to "file" a document means to file it with the court. One does not "file" a document by sending it to counsel for one's opponent.[8] Moreover, the plaintiffs did not send the confidentiality agreement to the defendant's counsel until more than one month after the court's deadline for compliance. In the end, the plaintiffs did not file the confidentiality agreement with the court until May 15, 2014, more than two months beyond the court's March 7, 2014 deadline, and when they did so, they utilized the rules of practice for allowing certain documents to be lodged with the court under seal while the propriety of permitting them to be filed under seal was being determined. It is perplexing that the plaintiffs did not utilize this procedure before the March 7, 2014 deadline in order to comply with the court's February 26, 2014 order.[9] The record thus supports the court's determinations that the plaintiffs failed to comply with its clear order.

We thus are left with the question of whether the sanction of the entry of a judgment of nonsuit was proportional to the plaintiffs' failure, through their counsel, to comply with the court's order. The issue of proportionality "poses a question of the discretion of the trial court that we will review for abuse of that discretion." *Burton* v. *Dimyan*, supra, 68 Conn. App. 847. "[D]iscretion imports something more than leeway

in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Rules are a means to justice, and not an end in themselves. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . Therefore, although dismissal of an action is not an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction of dismissal except as a last resort. . . . [T]he sanction of dismissal should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the court. . . . Th[is] reasoning . . . applies equally to nonsuits and dismissals." (Citation omitted; internal quotation marks omitted.) *Blinkoff* v. *O & G Industries, Inc.*, 89 Conn. App. 251, 257–58, 873 A.2d 1009, cert. denied, 275 Conn. 907, 882 A.2d 668 (2005).

Having finally had the opportunity to review the language of the confidentiality agreement, the court, clearly incensed by the specious contention of the plaintiffs' counsel that it was applicable to the documents that the defendant had requested,[10] concluded that: "[The] plaintiffs' assertion that it would cause [the] plaintiffs to violate the confidential settlement agreement, etc., was a false statement of fact to this court made with the intent to mislead." (Internal quotation marks omitted.) The court found additionally that the plaintiffs' failure to file the agreement with the court was a "deliberate, calculated, wilful and contemptuous flouting of the court's order," which went on for months.

Although findings of wilful or contumacious conduct, such as those found by the trial court here, often will support such a harsh response from the court as a judgment by nonsuit; see *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 16–17; *Dauti* v. *Stop & Shop Supermarket Co.*, 90 Conn. App. 626, 634–35, 879 A.2d 507, cert. denied, 276 Conn. 902, 884 A.2d 1025 (2005); the nature of the alleged violation is not the sole factor to be considered in assessing proportionality. We must not be "insensitive to the apparent harshness of any decision by a court that may be perceived as punishing the client for the transgres-

sions of his or her attorney. . . . Although our adversarial system requires that the client be responsible for acts of the attorney-agent whom the client has freely chosen . . . the court is not without the power to take action directly against the errant attorney. . . . In such a circumstance, we believe that it is particularly appropriate to assess whether counsel's failure timely to comply with an order, directed solely to counsel, should result in the loss of a party's ability to pursue his or her claim in court where other less drastic measures directed toward counsel could cause counsel's adherence to the court's order without prejudice to an innocent litigant." (Citations omitted; internal quotation marks omitted.) *Herrick* v. *Monkey Farm Cafe, LLC*, 163 Conn. App. 45, 52,      A.3d      (2016).

Here, although the court was unable to ascertain whether the plaintiffs themselves had knowledge of or were complicit in what it described as their counsel's "errant conduct," it ultimately concluded that: "[T]he misdeeds told herein are attributed solely to [the plaintiffs'] attorneys." On the basis of this finding, we do not believe that the failure of the plaintiffs' counsel to comply with the court's order should cause the plaintiffs to lose their ability to pursue their action.

Moreover, other than the protracted amount of time that the defendant was compelled to expend in pursuit of the documents at issue, it has failed to articulate how it was otherwise prejudiced as a result of the noncompliance with the court's February 26, 2014 order. The case proceeded while the subject dispute was awaiting final resolution and the defendant has not claimed that it was in any way prevented from defending itself against the plaintiffs' complaint or pursuing its own counterclaim against the plaintiffs due to the prolongation of the dispute.

On the basis of the foregoing, we conclude that the ultimate sanction of nonsuit was disproportionate to the violation of the court's order, and thus was an abuse of discretion.

The judgment is reversed and the case is remanded for further proceedings in accordance with the law.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Also named as party defendants in the wrongful death action were Marnelreed, Inc., Adele Dodge, Robert Giordano and Norman Costello. Giordano and Costello were the owners of Silk, LLC.

[2] It is not clear from the record before us in connection with which action or actions the depositions of Truax were taken or whether all of the actions were consolidated.

[3] In its later memorandum of decision denying the plaintiffs' motion to reargue, the trial court explained that it had rejected the plaintiffs' request for an in camera review of the confidentiality agreement because said request was "an improper attempt to circumvent the rules prohibiting the sealing of files and limiting disclosure of documents. See Practice Book §§ 11-20A and 11-20B."

Contrary to the court's statement, the 2005 commentary to § 11-20A clearly contemplates such a review. Practice Book § 11-20A (a) provides: "Except

as otherwise provided by law, there shall be a presumption that documents filed with the court shall be available to the public." The 2005 commentary explains, inter alia: "As used in subsection (a) above, the words 'Except as otherwise provided by law' are intended to exempt from the operation of this rule all established procedures for the sealing or ex parte filing, in camera inspection and/or nondisclosure to the public of documents, records and other materials, as required or permitted by statute; e.g., General Statutes §§ 12-242vv (pertaining to taxpayer information), 52-146c et seq. (pertaining to the disclosure of psychiatric records) and 54-56g (pertaining to the pretrial alcohol education program); other rules of practice; e.g., Practice Book Sections 7-18, 13-5 (6)–(8) and 40-13 (c); and/or controlling state or federal case law; e.g., *Matza* v. *Matza*, 226 Conn. 166, 627 A.2d 414 (1993) (establishing a procedure whereby an attorney seeking to withdraw from a case due to his client's anticipated perjury at trial may support his motion to withdraw by filing a sealed affidavit for the court's review). . . ."

[4] Contrary to the plaintiffs' motion, the trial court had not granted the motion to seal, but, as noted, had expressly reserved judgment on the motion.

[5] Practice Book 19-3 provides: "The clerk shall give notice to each referee of a reference and note in the court file the date of the issuance of the notice. In addition to matters required to be referred to a judge trial referee, the judicial authority may refer any civil nonjury case or, with the written consent of the parties or their attorneys, any civil jury case, pending before such court, in which the issues have been closed, to a judge trial referee, who shall have and exercise the powers of the superior court in respect to trial, judgment and appeal in such case, and any proceeding resulting from a demand for a trial de novo pursuant to subsection (e) of General Statutes § 52-549z, may be referred without the consent of the parties to a judge trial referee who has been specifically designated to hear such proceedings pursuant to subsection (b) of General Statutes § 52-434. Any case referred to a judge trial referee shall be deemed to have been referred for all further proceedings and judgment, including matters pertaining to any appeal therefrom, unless otherwise ordered before or after the reference. The court may also refer to a judge trial referee any motion for summary judgment and any other pretrial matter in any civil nonjury or civil jury case."

[6] The file reflects that Judge Parker had ruled on several other pretrial motions prior to ruling on the motions here at issue. The court, *Hon. Paul M. Vasington*, judge trial referee, likewise ruled on pretrial motions in this case. The plaintiffs voiced no objection to their involvement in this case until June 9, 2014, after they were nonsuited.

[7] The Reardon Law Firm, P.C., did not represent the plaintiffs on appeal.

[8] At oral argument before this court, appellate counsel for the plaintiffs emphasized the fact that the defendant had sought the production of the deposition documents, not the confidentiality agreement—that the defendant did not ask for the confidentiality agreement. The plaintiffs' counsel recounted that the February 26 mandate was that they produce the confidentiality agreement "**to the court.**" (Emphasized by counsel at oral argument before this court.)

[9] To be sure, if the trial court had taken the plaintiffs up on their offer for an in camera review of the confidentiality agreement in October, 2013, this dispute would not have lingered for the several months for which it remained unresolved. The court's failure to do so, however, did not relieve the plaintiffs from complying with the court's February 26, 2014 order.

[10] It is worth emphasizing the fact that the plaintiffs acknowledged that the defendant previously had possession of the documents at issue, rendering the plaintiffs' repeated assertions of confidentiality all the more puzzling.